UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARNIE O'BRIEN, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| | : | NO.: |
| vs. | : | |
| | : | PLAINTIFF REQUESTS A TRIAL |
| MIDDLE EAST FORUM, | : | BY JURY |
| DANIEL PIPES (individually), | : | |
| and | : | |
| GREG ROMAN (individually), | : | |
| Defendants | : | |
| | : | |
| | : | |

COMPLAINT

### I.    PRELIMINARY STATEMENT:

1.   This is an action for an award of damages, declaratory and injunctive relief,

attorneys' fees and other relief on behalf of Plaintiff, Marnie O'Brien.  Plaintiff is an employee

of Defendant, the Middle East Forum, who has been harmed by the Defendant's discriminatory

and retaliatory employment practices.

2.    This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 29

U.S.C. § 794, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), as amended, 43 P.S.

§ 951, *et. seq.*

### II.    JURISDICTION AND VENUE

3.    The jurisdiction of this Court is invoked, and venue is proper in this district,

pursuant to 28 U.S.C. § 1391 as Plaintiff's claims are substantively based on Title VII and the

PHRA.

4.    All conditions precedent to the institution of this suit have been fulfilled, such as

exhausted Administrative remedies and obtaining "Notice of Suit Rights" letters from the U.S.

1

Equal Employment Opportunity Commission ("EEOC") and PHRC.  Plaintiff has satisfied all

jurisdictional prerequisites to the maintenance of this action.

### III.    PARTIES

5.    The Plaintiff herein is:

Marnie O'Brien
81 Forest Court
Mantua, NJ 08051

6.    The Defendants herein are:

Middle East Forum
1650 Market Street #3600
Philadelphia, PA 19103

Daniel Pipes
1650 Market Street #3600
Philadelphia, PA 19103

Gregg Roman
1650 Market Street #3600
Philadelphia, PA 19103

It is further averred that Plaintiff has worked for Defendants, which include an

independent non-profit organization that serves as a political think tank and her supervisors

within that organization.

### IV.    ADDITIONAL UNDERLYING FACTS

7.    Plaintiff had been employed by Middle East Forum for approximately three years.

8.    Plaintiff was and remains employed by Defendant as a Director of Finance and

Administration.

9.     At all times relevant hereto, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of Defendant.

10.     At all times relevant hereto Defendants Daniel Pipes and Gregg Roman were employees of Defendant The Middle East Forum and held supervisory authority over Plaintiff.

11.     At all times material herein, Defendant The Middle East Forum is and has been a "person" and "employer" as defined under Title VII and is accordingly subject to the provisions of the Act.

## V.     STATEMENT OF THE CLAIMS

12.     Paragraphs 1 through 11 are incorporated by reference, as if set forth at length.

13.     Plaintiff alleges that prior to and continuing until in or around June of 2019, Defendants, through its agents, servants, and employees, subjected her to discrimination and retaliation violative of Title VII.  The facts in support of these allegations include, but are not limited to the following:

## VI.     UNDERLYING FACTS

14.     Plaintiff alleges that Defendant, through its agents, servants, and employees, subjected her to sexual harassment and gender-based discrimination. Plaintiff further believes and avers that the Defendants punished her in a retaliatory fashion for her objections to said conduct and engagement in protected activity.  These actions constitute violations of Title VII and the PHRA.

15.     Plaintiff began employment with Defendant, Middle East Forum, ("Defendant") approximately three years ago in 2016 in the role of Director of Finance and Administration.

16.     During her three years of employment with Defendant, Plaintiff performed her job functions in a dutiful and competent matter and at all times maintained at least a satisfactory performance level.

17.     Plaintiff's job duties include reviewing Defendant's finances, insurance agreements, and handling human resource issues.

18.     Throughout her employment with Defendant, Plaintiff was subject to crude sexual comments from Greg Roman ("Roman"), Director of the Middle East Forum. To provide examples, he would offer unsolicited remarks to Plaintiff such as "I like older women" or "non-Jewish women were made for sex." These were just a few of the lewd comments he would make. He would offer unsolicited information about his sex life at inappropriate times. These comments were directed towards Plaintiff and made her extremely uncomfortable.

19.     Upon information and belief, Plaintiff was not the only female employee subjected to this behavior by Roman.

20.     In or around September 2018, Roman invited Plaintiff to a business dinner to discuss the office, staff, and operations.

21.     During the dinner, Roman discussed various inappropriate topics unrelated to work, specifically, sex, relationships, and marital problems he was having. He repeatedly invited Plaintiff to walk back to the office with him to "retrieve papers he forgot."

22.     After Roman asked Plaintiff three times to drive back to the office with him, he continued to make advances throughout the dinner. Plaintiff, in an attempt to curtail the inappropriate behavior, told Roman that not only was she not going back to the office alone, she would not be sleeping with him.

23.     Plaintiff never again attended any dinner meetings with Roman.

24.     A few weeks later, Roman invited Plaintiff on a business trip to Israel with him.

When Plaintiff inquired about accommodations, he indicated that he had rented an Airbnb for the

two of them to share. Plaintiff requested that they stay in separate rooms in a hotel, but the

request was declined. Plaintiff was left with the option of sharing a residence, including a

bathroom, with Roman or else missing out on the opportunity to attend the business trip and

further her career.

25.     Plaintiff, not wanting to subject herself to Roman's advances, declined to go on

the trip, as she would have had to share living quarters with him. Because of his inappropriate

behavior and insistence on sharing a residence with a female subordinate, Plaintiff missed out on

the opportunity to further her career and participate on the business trip.

26.     From this point forward Roman behaved in a punitive manner towards Plaintiff.

27.     Upon information and belief, Defendant Daniel Pipes, President of Defendant

Middle East Forum ("Pipes") was made aware of the circumstances surrounding the trip and did

nothing to address or stop Roman's behavior.

28.     In fact, when Plaintiff declined Roman's invitation, Roman invited Lisa

Barbounis, an Administrative Assistant. Upon her return, Ms. Barbounis made a comment to

Plaintiff about the "shit [Mr.  Roman] pulled in Israel." When Plaintiff inquired about the

comment, Ms. Barbounis did not address the trip again.

29.     Later, Roman indicated to Plaintiff that while abroad, Ms. Barbounis "hit on

him."

30.     Soon thereafter, Roman directed Plaintiff to search for reasons to discipline Ms.

Barbounis and to document any minor flaw or performance issue Ms. Barbounis exhibited while

working for Respondent, including minutiae such as being a few moments late or speaking too

loudly. Plaintiff was not directed to subject any other employee to the same level of scrutiny or discipline, only Ms. Barbounis.

31.     Upon information and belief, Roman used his power and authority within the Middle East Forum to retaliate against any female employee who rejected his sexual advances or expressed distaste or discomfort with his lewd behavior and speech.

32.     Additionally, upon returning from Israel, Roman offered unsolicited commentary to Plaintiff about how he had sex with Leah Merville, a young female intern, while abroad. He told Plaintiff, he purposely left Ms. Merville's internship papers in Airbnb to lure her to his room to retrieve the papers. Roman boasted about sleeping with Ms. Merville, a young female subordinate, to Plaintiff and, upon information and belief, many other employees.

33.     On October 30, 2018, Plaintiff and Ms. Barbounis got into an argument due to Plaintiff continuing to document Ms. Barbounis' mishaps at Roman's orders.

34.     The next day, October 31, 2018, Plaintiff arranged to meet with Ms. Barbounis to address the argument from the previous day. At this meeting, Ms. Barbounis informed Plaintiff that when she went to Israel with Roman, he attempted to force himself on her. She stated that she was so afraid of Roman that she slept with a knife under her pillow.

35.     Upon hearing this information, on November 1, 2018, Plaintiff wrote a letter to Pipes, addressing Roman's actions with her, Ms. Barbounis, and Ms. Merville. She notified Pipes of her directive to search for reasons to discipline Ms. Barbounis following the Israel trip.

36.     As a result of Plaintiff's letter, on November 5, 2018, Pipes held a staff meeting, inviting Plaintiff, Roman, Ms. Barbounis, Marc Fink, legal project coordinator, Tricia McNulty, event coordinator, Caitriona Brady, Development Assistant, Matthew Bennett, director, Stacey Roman (Roman's sister), Thelma Prosser.

37.     Roman did not attend the meeting, but his sister Stacey did.

38.     At this meeting, rather than addressing Plaintiff's complaints or Roman's conduct at all whatsoever, Pipes introduced a new non-disclosure agreement, which contained a provision stating that employees could not talk to anyone about any wrongdoings of company officers, including Roman.

39.     All employees present at the meeting were pressured to sign the non-disclosure agreement.

40.     On November 5, 2018, Pipes changed Roman's job duties so that Roman would no longer work on-site and would instead work remotely. He was to have no supervision over Plaintiff or have access to her work. Plaintiff was informed this change was permanent.

41.     Upon information and belief, Roman's pay was not changed, nor was he disciplined in any way. In fact, he was rewarded for his bad behavior with less supervisory responsibilities, being permitted to work from home and having no change or reduction in compensation in exchange for less work and more privileges.

42.     Despite Plaintiff being reassured that Roman would no longer be permitted to work in the office or supervise her work, in March of 2019, Roman was considered for a promotion that would put him back in the office and again directly supervising Plaintiff. On March 9, 2019, Plaintiff raised objections to working with him at a staff meeting.

43.     Plaintiff also sent an email to Mr. Fink stating that she did not want Roman to receive the position. Mr. Fink responded to Plaintiff assuring her that she would not have contact with him in the event he returned.

44.     After the March 9, 2019 meeting, Plaintiff became aware that after she wrote the letter to Pipes informing him of Roman's behavior, Roman informed all of Plaintiff's colleagues that Plaintiff only got her prior job by sleeping with her former boss.

45.     Upon information and belief Roman spread several other rumors about Plaintiff to her colleagues in retribution for her speaking out about his behavior.

46.     Plaintiff again advised Pipes of Roman's conduct.

47.     Upon information and belief, Pipes had been receiving complaints about Roman's predatory conduct towards female subordinates for years.

48.     Upon information and belief complaints about Roman escalated once Plaintiff wrote her first letter about Roman to Pipes.

49.     When Plaintiff reported Roman's comments about her to Pipes for the second time, again Pipes did absolutely nothing. Specifically, Pipes told Plaintiff  to let it go. He openly stated that he refused to investigate the matter. As an afterthought, Pipes told Plaintiff not to worry, Roman would not be supervising her when he came back to the office.

50.     On June 3, 2019, Plaintiff received an email from Pipes telling her that Roman was again to become her supervisor. She emailed him stating she was told many times Roman would not be involved in her work in any way.

51.     Pipes showed no sympathy towards Plaintiff and asked her to "put her feelings aside" and instructed her to send Roman her work.

52.     Through her position as Director of Finance, Plaintiff discovered that other male directors were making more money than her, as well as other similarly situated female employees, by $10,000 or more.

53.     Throughout the course and tenure of her employment with Defendant, Plaintiff has endured severe and pervasive discrimination, harassment and retaliation at the hands of Defendants Middle East Forum, Gregg Roman and Daniel Pipes.

54.     At all times relevant herein Middle East Forum and Daniel Pipes have cared more about protecting Gregg Roman from being subjected to litigation than correcting his behavior and protecting the health and well-being of female employees of Middle East Forum. This is evidenced by the consistent enactment of workplace policies making the reporting of complaints about Roman's conduct more difficult. This is further evidenced with the fact that when faced with Plaintiff's complaints about Roman, Pipes asked female subordinates to sign a non-disclosure agreement rather than addressing Roman's predatory behavior.

55.     Since the commencement of this action, Plaintiff has been forced to file additional EEOC charges against Defendant due to their retaliatory conduct after the filing of the initial EEOC charge. Specifically, upon information and belief, Defendant has deliberately interfered with Plaintiff's ability to find employment elsewhere by identifying prospective employers and informing them that Plaintiff has sued every employer she has ever worked for for sexual harassment and also that Plaintiff is addicted to drugs. Both statements are patently false. The subsequent EEOC charge has not yet made it through the administrative process, but it is Plaintiff's intention to file an additional complaint and consolidate the matters when the charge is ripe for filing.

56.     Upon information and belief, several female employees of the Middle East Forum have filed EEOC charges against Defendant due to Roman's conduct and Pipes refusal to address the conduct or do anything to subdue Roman's predatory behavior.

## COUNT I

### DISCRIMINATORY TREATMENT ARISING UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 BASED ON SEX
### MARNIE O'BRIEN vs. MIDDLE EAST FORUM, DANIEL PIPES AND GREGG ROMAN

57.     Paragraphs 1-56 are incorporated herein as if set forth at length.

58.     Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, religion, sex, or national origin.  The Act also makes it illegal to discriminate or retaliate against an individual who complains about discriminatory conduct. Further, the Act also prohibits pay discrimination based upon sex or gender.  Plaintiff alleges violations based on sex as set forth below;

59.     Plaintiff began employment with Middle East Forum in 2016 in the role of Director of Finance and Administration.

60.     Throughout the course of her employment with Defendant, Plaintiff performed her job functions in a dutiful and competent manner and at all times maintained at least a satisfactory performance level.

61.     Throughout the course of her employment, Plaintiff was subject to crude sexual remarks and unwanted advances by Roman. Defendant turned a blind eye to the conduct and allowed it to continue.

62.     Plaintiff was discriminated against due to her sex. She was pitted against her female coworkers and was ultimately ignored when she asked not to work with Roman after he had previously demonstrated perverse behavior towards her that made her feel unsafe in the workplace.

63.     Plaintiff was denied opportunities such as business trips that would allow her to excel in her career due to her refusal to have sex with Roman or share a residence with him during the trip.

64.     Additionally, when these accusations were brought to Pipes' attention, he temporarily assigned Roman to work remotely, only to bring him back into the workplace despite his egregious conduct.

65.     Pipes allowed Roman to sexually harass and retaliate against female subordinates with no fear of recourse. Roman openly engaged in harassing conduct which was not only tolerated by Pipes but arguably encouraged by Pipes refusal to discipline Roman while simultaneously disciplining the female employees who reported Roman's conduct to him.

66.     Upon information and belief, other than working remotely for a few months' time, which would be considered a benefit rather than a punishment to the grand majority of the American workforce, Roman was never disciplined for his inappropriate conduct.

67.     Defendant unlawfully harassed Plaintiff due to her sex. Plaintiff was harassed when Roman made lude, sexual comments to her, continued to pursue Plaintiff by inviting her to his office, and inviting her to Israel to stay in the same residence as him. The harassment continued when he behaved punitively towards her, spreading rumors and behaving in an openly hostile manner.

68.     Defendant further discriminated against Plaintiff by paying her approximately $10,000 less than her male counterparts.

## COUNT II

## DISCRIMINATORY TREATMENT ARISING UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
## MARNIE O'BRIEN vs. MIDDLE EAST FORUM, DANIEL PIPES AND GREGG ROMAN

69.     Plaintiff incorporates paragraphs one through 68 as if set forth here at length.

70.     Much like Title VII, the Pennsylvania Human Relations Act prohibits discrimination, pay discrimination and retaliation based upon sex or gender.

71.     As pled above, Defendants have demonstrated a pattern of subjecting female employees to sexual harassment and retaliation when the harassment is reported.

72.     As pled above, Defendants treat female employees differently than their similarly situated male counterparts.

73.     As pled above, Defendants pay female employees differently than their similarly situated male counterparts.

74.     As pled above, Defendants have made no efforts to address any of these behaviors upon becoming aware of them, and, in fact, the behaviors are encouraged.

## PRAYER FOR RELIEF

75.     Plaintiff incorporates paragraphs 1 through 74 as if set forth at length.

**WHEREFORE**, Plaintiff requests that this court enter judgment in her favor against the Defendant, and order that:

A.      Defendant compensate Plaintiff with back pay, at a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination based on her sex.

B.      Defendant compensate Plaintiff with an award of front pay, if appropriate;

C.      Defendant pay to Plaintiff punitive damages, compensatory damages for future

pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses as allowable;

D.      Defendant pay to Plaintiff pre and post judgment interest, the costs of suit and

attorney and expert witness fees as allowed by law;

E.      Defendant shall eliminate all unlawful discriminatory practices as well as remedy

the discriminatory effect of past practices and procedures;

F.      The Court shall award such other relief as if deemed just and proper, in law and/or

equity, including injunctive relief if the Honorable Court deems said relief appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury.


Respectfully submitted,

**POND LEHOCKY, LLP**


By. _____

Erica A. Shikunov
2005 Market Street
18th Floor
Philadelphia, PA 19103
P: 800-568-7500
F: 215-525-0811
E: eshikunov@pondlehocky.com