# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARNIE O'BRIEN, :
               Plaintiff, :
                :
      v. : Civil No. 2:19-cv-06078-JMG
                :
THE MIDDLE EAST FORUM, *et al.*, :
               Defendants. :

## MEMORANDUM OPINON

December 14, 2020

**I.    Overview**

The present Motion seeks disqualification of Plaintiff's counsel Derek Smith Law Group ("DSLG") due to an alleged conflict of interest between Defendant Gregg Roman and DSLG partner Caroline Miller. Defs.' Mot., ECF No. 51. Plaintiff opposes this Motion, arguing that no conflict exists, and that Defendant Roman has waived any right to object to any conflict regardless. Pl.'s Br., ECF No. 54. For the reasons set forth below, the Court finds that Defendant Roman failed to timely object to any purported conflict, and as a result waived his right to assert a conflict of interest with regards to Attorney Miller. Therefore, Defendants' Motion to Disqualify Counsel is denied.

**II.    Standard of Review**

Federal district courts have the "inherent authority to supervise the conduct of attorneys appearing before them." *James v. Teleflex, Inc.*, No. Civ. A. 97-1206, 1999 WL 98559, at *2 (E.D. Pa. Feb. 24, 1999) (citing *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 161 (3d Cir. 1984)). In this District, the Pennsylvania Rules of Professional Conduct guide such supervision. E.D. PA. Civ. R. 83.6, Part IV(B). Under these Rules, a court may disqualify counsel from

representing a particular client in order to eliminate conflicts of interest and protect confidential communications between attorneys and their clients. *See Commonwealth Insurance Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992). The Court should grant a motion to disqualify counsel when "it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule, given the ends that the disciplinary rule is designed to serve." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).

"Disqualification is a harsh measure and is generally disfavored." *Graphix Hot Line*, 808 F. Supp. at 1203. Courts are disinclined to grant motions to disqualify out of concern that they could be used as a "procedural weapon." *Wolf, Block, Schorr & Solis-Cohen v. Navon*, No. Civ. A. 056038, 2006 WL 680915, at *1 (E.D. Pa. Mar. 9, 2006). The Court must afford due regard to countervailing policies "such as permitting a litigant to retain the counsel of [their] choice and enabling attorneys to practice without excessive restrictions." *Jackson v. Rohm & Haas Co.*, No. 05-4988, 2008 WL 3930510, at *2 (E.D. Pa. Aug. 26, 2008). Accordingly, the moving party has the burden of demonstrating that opposing counsel must be disqualified, and such motions should only be granted when absolutely necessary. *See Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999); *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996).

**III.   Discussion**

Defendants Middle East Forum ("MEF") and Gregg Roman seek disqualification of Plaintiff's counsel DSLG based on a conflict of interest arising from the firm's purported prior representation of Mr. Roman. Mr. Roman alleges that in April 2016, he attended a Passover dinner at the home of Caroline Miller's parents. Defs.' Mot., Ex. 3 ¶ 2. Ms. Miller is currently a partner at DSLG, the firm representing Plaintiff in this case. Pl.'s Br., Ex. B ¶ 1. At the dinner, Mr. Roman states that he sought confidential legal advice from Attorney Miller and divulged to her private

2

information substantially related to the present litigation, which had yet to commence. Defs.' Mot., Ex. 3 ¶¶ 5-8. Based on this interaction, Mr. Roman claims that he and Attorney Miller entered into an implied attorney-client relationship under Rule 1.9 of the Pennsylvania Rules of Professional Conduct, or alternatively, was a perspective client under Rule 1.18. Defs.' Br. 6. In either instance, Mr. Roman argues that this represents a conflict of interest which should be imputed to Attorney Miller's entire firm and necessitates disqualification. Defs.' Sur-Reply 10, ECF No. 59

Plaintiff counters that Attorney Miller neither provided Mr. Roman legal advice nor had a one-on-one conversation with him concerning information pertinent to this case. Pl.'s Br., Ex. B ¶ 12. Although Attorney Miller concedes that Mr. Roman was at her parents' house for dessert, she reiterates that she neither discussed with him facts related to this case nor gave him legal advice. Pl.'s Resp., Ex. A ¶¶ 8-9, ECF No. 63. Attorney Miller also states that she is not personally involved in this case nor does she supervise the DSLG attorneys who are working on Plaintiff's behalf.[1] Pl.'s Br., Ex. B ¶ 35. Plaintiff further argues that even if such a conflict did exist, Mr. Roman waived his right to object because he was aware of Attorney Miller's participation in an action involving similar claims against him dating back to January 2017. Pl.'s Br. 9.

The Parties have offered affidavits and other proof supporting their competing assertions as to whether an attorney-client relationship ever existed between Mr. Roman and Attorney Miller.[2] Therefore, there appears to be a genuine factual dispute as to whether a conflict of interest actually exists. Instead of weighing in on the credibility of each Parties' proffered evidence, the Court will dispose of the matter based on what the record shows to be beyond dispute: the length of time

---

[1] Although Attorney Miller indicates that she has never supervised or participated in any work by Plaintiff's counsel, the Court recommends, out of an abundance of caution, that DSLG formalize proper screening protocol to ensure that Attorney Miller remains completely separated from this matter.

[2] In addition to an affidavit by Attorney Miller, Plaintiff offers an affidavit by Attorney Miller's sister Erica Miller, attesting to the same facts concerning the dinner. Pl.'s Br., Exs. B-C. Mr. Roman offers his own affidavit and the affidavits of two other attendees of the dinner. Defs' Sur-Reply, Exs. 1-3.

3

between when Mr. Roman first learned of the facts relevant to a potential conflict, and the timing of the present Motion in relation to an apparent pattern of dilatory conduct by Mr. Roman.

Irrespective of whether a court determines that a violation of the rules of professional conduct has occurred, it must balance various competing interests before concluding disqualification is the appropriate remedy. *In re Rite Aid Securities Litigation*, 139 F. Supp. 2d 656 n. 7 (E.D. Pa. 2001). One such consideration is whether the moving party has waived its objection to a purported conflict of interest by failing to do so in a timely manner. *Graphix Hot Line*, 808 F. Supp. at 1208. Specifically, "courts should inquire whether the motion was delayed for tactical reasons." *Id.* This requires the Court to consider the length of the delay in bringing the motion, the reason for the delay, when the moving party learned of the conflict, whether the moving party was represented by counsel during the period of delay, and whether disqualification would prejudice the nonmoving party. *Worth v. Worth*, No. 16-3877, 2016 WL 7007721, at *9 (E.D. Pa. Nov. 29, 2016) (citing *Rite Aid Securities Litigation*, 139 F. Supp. 2d at 660).

Here, each of the aforementioned factors counsel against granting Defendants' Motion. In January 2017, Attorney Miller sent an EEOC claim letter to Defendant Middle East Forum concerning a separate action against Mr. Roman, with similar allegations, for which she had been retained. Pl.'s Br., Ex. B ¶¶ 23, 25. This bears repeating. Nearly four years before the instant Motion to Disqualify Attorney Miller and her firm, Mr. Roman knew that Attorney Miller and DSLG were engaged in a separate action against him concerning related facts. Even though that action arose one year after he claims to have received legal advice from Attorney Miller at a holiday dinner, he did not object to her involvement.

For his part, Mr. Roman claims that had the 2017 matter involving Attorney Miller proceeded to a lawsuit, *he would have objected* to her participation. Defs.' Sur-Reply, Ex. 1 ¶ 16. "Woulda, coulda, shoulda" notwithstanding, Mr. Roman acknowledges that he had long known of

4

Attorney Miller's association with DSLG, and her firm's adversarial role in a lengthy series of related cases brought against him and MEF.  Indeed, the present matter is the sixth such action filed against Mr. Roman by Attorney Miller's firm.[3]  Pl.'s Br., Ex. B ¶ 27.  Mr. Roman has never previously moved to disqualify Attorney Miller, or her firm, based on her purported conflict of interest.  Pl.'s Br., Ex. B ¶ 31.  Therefore, despite Mr. Roman knowing of Attorney Miller's involvement in a similar proceeding against him since January 2017, he now seeks disqualification of Attorney Miller's entire firm for the very first time.

Perhaps appreciating that his knowledge of the purported conflict dating back four years is beyond dispute, Mr. Roman claims that he had not previously objected to DSLG's representation because he only recently learned of Attorney Miller's supposed involvement in this case.  Defs.' Sur-Reply 3.  He alleges that it was only after he became aware that Attorney Miller had not been screened from this case that he had reason to seek DSLG's disqualification.  *Id.*  Mr. Roman claims that this realization arose after he discovered a text message between DSLG attorney Seth Carson and Attorney Carson's client, Lisa Barbounis, discussing a separate but related matter against Mr. Roman.[4]  Defs.' Mot. 15.  In this text message, sent on June 28, 2019, Attorney Carson states that Attorney Miller contacted him to discuss her knowledge of facts that were pertinent to Ms. Barbounis's case.  Defs.' Mot., Ex. 2.  Mr. Carson then posits, "I guess what she knows about Greg [Roman] comports with what you all have reported…[i]t sounded like she [dealt] with the Middle East Forum before."  *Id.*  Mr. Roman then provides evidence that Ms. Barbounis subsequently forwarded this text message to the Plaintiff in the instant case, Ms. O'Brien.  Defs.' Sur-Reply, Ex.

---

[3] Mr. Roman suggests that the Court, in conducting its waiver analysis, should not consider his knowledge regarding Attorney Miller's prior involvement in related matters against him or the fact the DSLG has previously brought five other actions against him.  Defs' Sur-Reply 3.  Mr. Roman offers no precedential or persuasive support for this contention, and the Court therefore declines to pretend that he was unaware of such facts.

[4] *Barbounis v. Middle East Forum* (2:19-cv-05030).

8. Mr. Roman insists that this provided concrete proof that Attorney Miller was directly involved in the instant case, thereby necessitating emergency disqualification of DSLG. Defs.' Mot. 2.

Mr. Roman offers this text, and its message of Attorney Miller's familiarity with Mr. Roman and MEF, as the smoking gun proof of Attorney Miller's use of privileged information against him in this case. But Mr. Roman's reasoning is specious at best. At the outset, the text message relates to communications Attorney Miller had with a colleague concerning a case different than the one before this Court. It does not prove, as claimed by Mr. Roman, that Attorney Miller was involved in the present case, much less that she and DSLG were using privileged information against him in this case. Likewise, the fact that this text message was later forwarded to Plaintiff provides no direct link between Attorney Miller and Plaintiff's counsel.[5] Instead of providing support for the present Motion, Mr. Roman's argument makes it difficult to fathom a non-tactical reason why he seeks disqualification in this case, *but not in the case actually discussed in the text message*.[6]

As to the substance of the text message, it does support the contention that Attorney Miller had previously worked on a matter involving Mr. Roman and similar allegations against him. However, as discussed, this is not news to him. The message is entirely consistent with the fact that Attorney Miller previously sent a claim letter to MEF in 2017 regarding allegations against Mr. Roman that were similar to those in the case discussed in the text message. And, as Mr. Roman told the Court, he chose not to challenge the 2017 participation of Attorney Miller and DSLG in that matter. Defs.' Sur-Reply, Ex. 1 ¶ 16.

---

[5] Without any supporting evidence, Mr. Roman concludes that, following this text exchange, Attorney Miller "inserted herself into the present action by becoming supervising attorney" to Plaintiff's counsel. Defs.' Mot. 2. In two separate affidavits, Attorney Miller, a partner in DSLG's Miami office, denies ever having managed Plaintiff counsel's work. Pl.'s Br., Ex. B ¶ 35; Pl.'s Resp., Ex. A ¶ 16.

[6] Defendants have not filed a Motion to Disqualify DSLG in any of the related matters. Defs.' Sur-Reply 8.

Although Plaintiff states that the original text message was disclosed in July 2020 during discovery in a related case, Mr. Roman asserts that Plaintiff did not produce a copy of the text message as forwarded to Ms. O'Brien until November 9, 2020.[7]  Defs.' Sur-Reply 4; Pl.'s Resp. 6. Mr. Roman claims that immediately upon learning that this text message, *concerning a different case*, was forwarded to Ms. O'Brien, he concluded that Attorney Miller had not been effectively screened from the instant case and he filed this Motion.  *Id.* at 3.  Curiously, in the Motion filed the very next day on November 10, 2020, Defendants state that "DLSG imposed no…screening to cure the conflict."  Defs' Mot. 13.  Therefore Defendants sought, among other things, a court order requiring that Attorney Miller merely be screened from the present litigation.[8]  *Id.* at 17.  Yet in Defendants' Sur-Reply, Defendants state that since Plaintiff's counsel joined DSLG, "Defendants have operated with the understanding that an ethical wall had been erected between this case and the related cases."  Defs.' Sur-Reply 9.  They go on to state that "[a]n ethical screen in this case would not suffice because DSLG has demonstrated that it is unable or unwilling to maintain such a screen."  *Id.*

Mr. Roman's nearly four-year delay in seeking disqualification is further amplified by the fact that he previously delayed his deposition on two prior occasions.  Pl.'s Br. 4.  In his second affidavit to the Court, Mr. Roman asserts that circumstances beyond his control necessitated rescheduling each of his previously scheduled depositions.  Defs.' Sur-Reply, Ex. 1 ¶¶ 11-13.  Mr. Roman's first deposition was scheduled for September 23, 2020.  *Id.* at ¶ 11.  Mr. Roman claims that because his counsel was diagnosed with COVID-19 in early September, it was necessary to

---

[7] Mr. Roman admits that he did in fact have possession of original text message prior to November 9, having received it during discovery in *MEF v. Barbounis* (2:19-cv-05697).  Defs.' Mot. 2; Defs.' Sur-Reply 4.

[8] In the initial Motion to Disqualify, Defendants asked the Court to disqualify DSLG or, in the alternative, order that Attorney Miller be screened from the present matter.  Defs.' Mot. 17.  In Defendants' Sur-Reply, Defendants hardened their demand to disqualification of DSLG.  Defs.' Sur-Reply 10.

7

reschedule his first deposition. *Id.* However, one week before Plaintiff's counsel was informed of this diagnosis, another member of Mr. Roman's defense team informed Plaintiff's counsel that Mr. Roman was "not available" during the week of the scheduled deposition due to his observance of religious holidays. Pl.'s Resp. Ex. B. The fact that Mr. Roman indicated his unavailability to appear at his previously noticed deposition prior to his counsel's unfortunate diagnosis hollows his claim of cause and effect.

Plaintiff's counsel agreed to reschedule Mr. Roman's deposition for October 13, 2020. Defs.' Sur-Reply, Ex. 1 ¶ 13. Mr. Roman then states in his affidavit that this deposition needed to be rescheduled because he "was called to Europe for an important and highly time-sensitive business matter." *Id.* On October 2, 2020, Mr. Roman's counsel informed Plaintiff's counsel that Mr. Roman was "going to be out of the country beginning October 10, [2020]," would be in London on the day of his scheduled deposition, and was "expected to return October 29, [2020]." Pl.'s Resp., Ex. C. Mr. Roman states that he returned to the United States on November 8, 2020 and "stood ready to proceed" with his deposition, which had been rescheduled to November 12. Defs.' Sur-Reply, Ex. 1 ¶ 14.

As evidence of his assertion that he was called away to Europe and returned in time for his November 12 deposition, Mr. Roman submits copies of his plane ticket receipt and itinerary from said trip. Defs.' Sur-Reply, Ex. 1-E. According to the receipt, Mr. Roman did in fact return from Europe on November 8, 2020. *Id.* However, the receipt also indicates that Mr. Roman purchased the ticket for this trip on October 17, 2020, and departed the following day from Newark, New Jersey to Paris, France on October 18, 2020. Defs.' Sur-Reply, Ex. 1-E. This evidence is inconsistent with Mr. Roman's sworn statements and his representations to Plaintiff's counsel.

According to the evidence submitted by Mr. Roman himself, the trip which precluded him from attending his October 13 deposition did not begin until October 18.[9]

Having rescheduled his deposition for a second time due to his purportedly important and time-sensitive business trip, Mr. Roman was next scheduled to be deposed on November 12, 2020. Defs.' Sur-Reply, Ex. 1 ¶ 14. The Parties stipulated that Mr. Roman could not move this third-scheduled deposition date without leave of the Court. Pls.' Resp., Ex. C. Then, on November 10, 2020, Mr. Roman filed the present Motion as well as an Emergency Motion to Temporarily Stay the Proceedings, the latter of which was granted on November 12, 2020. ECF No. 51. Plaintiff's counsel voiced their objection to this Motion to Mr. Roman's counsel via email on November 11, 2020. Pl.'s Resp., Ex. F. In response, Mr. Roman's counsel advised that since the Court had not yet responded to the Motion to Disqualify (filed less than 24 hours prior), Mr. Roman was prepared to proceed with his deposition the following day. *Id.* Mr. Roman's counsel then explained that only Plaintiff could move to reschedule the deposition, if they so desired, since Mr. Roman had stipulated that he could not do so without leave of the Court. *Id.* Plaintiff's counsel was thus faced with the choice of either asking the Court to reschedule the deposition for a third time or proceeding with the deposition despite the unresolved conflict claim still pending before the Court.

Mr. Roman has also been represented by counsel for the entire duration of this four-year delay between the undisputed date that Mr. Roman learned of Attorney Miller's involvement in a related matter against him and the present Motion. Pl.'s Br. 11. Furthermore, Attorney Miller's employment at DSLG has remained an open and obvious fact, as has her handling of at least one other matter involving similar claims against Mr. Roman. *Id.* With regards to prejudice to the

---

[9] Mr. Roman also submitted a plane ticket receipt and itinerary showing that he had flown to France on September 6, 2020 and returned on September 17, 2020. Defs.' Sur-Reply, Ex. 1-D. Mr. Roman only attests to having taken two trips to Europe between September 6 and November 8. Defs.' Sur-Reply, Ex. 1 ¶¶ 12, 13. He offers no evidence of any other trips to Europe during this time.

nonmoving party, forcing Plaintiff to find new counsel at this stage of litigation would be devastating to her case, especially in light of the repeated delays necessitated by Mr. Roman's conduct.

**IV.     Conclusion**

It too greatly strains credulity for Mr. Roman to suggest that this is the first time he realized Attorney Miller's employment at DSLG might represent a conflict of interest.  The Court is unable to ascertain any viable explanation as to how disqualification is absolutely necessary in 2020, when it was not in 2017.  A purported conflict of interest is not a chit to be held in a litigant's pocket until a rainy day.

In denying Defendants' Motion to Disqualify Counsel, the Court leaves for another day the propriety of sanctions.[10]  The immediate issue before the Court is whether Defendants have met their burden of demonstrating that disqualification is absolutely necessary.  Having found that they failed to timely object to the purported conflict and therefore waived the right to do so, Defendants' Motion is denied.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[10] "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).