IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARNIE O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MIDDLE EAST FORUM, | ) |
| DANIEL PIPES (individually), and | ) |
| GREGG ROMAN (individually), | )  C.A. No. 19-06078 JMG |
| | ) |
| Defendants. | ) |
| | ) |
| GREGG ROMAN, | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARNIE O'BRIEN, | ) |
| | ) |
| Counterclaim Defendant, | ) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGEMENT**

~of counsel~
Margaret M. DiBianca, Esq. (DE No. 4539)
CLARK HILL PLC
824 N. Market Street, Ste. 710
*Admitted Pro Hac Vice*
Wilmington, DE 19801
P: (302) 250-4748
F: (302) 421-9439
mdibianca@clarkhill.com

Kevin Levine, Esq. (PA Bar No. 326492)
CLARK HILL PLC
Two Commerce Square
2001 Market Street, Ste. 2620
Philadelphia, PA 19103
P: (215) 640-8500
F: (215) 640-8501
Klevine@clarkhill.com

Dated:   March 23, 2021                    *Attorneys for Defendants*

262346982.v1

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

ARGUMENT .................................................................................................................................. 1

    I.     There Is No Genuine Dispute that Plaintiff's PHRA Claim Is Time Barred ...................... 1

    II.    There Is No Genuine Dispute that Summary Judgment Should Be Granted on Plaintiff's Claims ................................................................................................................................ 2

          A.    Plaintiff Concedes that the Alleged Conduct Does Not Constitute Unlawful Harassment or Gender Discrimination .................................................................... 2

          B.    Plaintiff's Proxy Argument Is Unsupported by Law ......................................... 3

          C.    There Is No Genuine Dispute that the *Ellerth-Faragher* Defense Bars Plaintiff's Claims .................................................................................................................... 4

    III.   There Is No Genuine Dispute that Plaintiff Removed Herself from the Job Market ......... 7

CONCLUSION ............................................................................................................................... 8

i

# ARGUMENT

## I. There Is No Genuine Dispute that Plaintiff's PHRA Claim Is Time Barred

In her Response, Plaintiff attempts to save her PHRA claim (Count I) by claiming that she was subject to "offensive acts" that occurred within the 180-days prior to the filing of her Charge on July 24, 2019. Specifically, Plaintiff alleges *without citation to the record* that, during the 180-day period (going back to January 24, 2019), (1) there were "rumors that she slept with [her coworker's] father; (2) "employees scream[ed] through the office that she 'sucked big black cock;'" and (3) that she was "compelled to work directly with" Mr. Roman. (ECF 81 at p.14). This one-sentence attempted defense fails entirely.

First, Plaintiff makes no attempt to cite to the record in support of these claims, which makes sense in light of the fact that the record contains no such support. For that reason alone, her arguments should not be heard by the Court. *Parker v. Sch. Dist. of Phil.*, 823 Fed. Appx. 68, 72 (3d Cir. 2020) (*citing Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)) (holding that a litigant cannot rely on suspicions, simple allegations, or conclusory statements to show a genuine issue of material fact).

Second, not only are the allegations unsupported by the record, they are directly *contradicted* by the record. Though Plaintiff now claims she was forced to work with her alleged harasser, she testified that she did not in fact work with Roman on the audit, the two did not work together in the same physical space, and Roman's involvement in the audit was due to his unique institutional knowledge. (A-649; 650; 623). Further, as Plaintiff admitted in her deposition, she believes that her *co-worker*, Ms. Barbounis, "shouted about [Plaintiff's] sex life and [that she] suck[s] big black cock" *and* that Ms. Barbounis allegedly made those statements, as crude as they may be, *before* November 2018. (A-719). And, as Plaintiff also admitted at deposition, the alleged rumor about her sleeping with Mr. Brady also was allegedly circulated

1

before November 2018 and she has no knowledge of it being circulated thereafter. (A-636). That Plaintiff may have *learned of* the alleged rumors after it was made does not change the fact that the rumors occurred *before* the investigation and resolution of her complaint in November 2018. Finally, Plaintiff admitted at her deposition that she was *not* required to work with Mr. Roman after November 2018. (A-650). Plaintiff's deposition testimony that makes this absolutely clear:

> Q: Other than Mr. Roman's involvement in the audit, . . . other than that **was there anything that Mr. Roman did to which you took offense after November 5, 2018**?
>
> A: I don't believe so.

(SOF 117) (emphasis supplied).

Thus, none of the allegations in her unsupported single-sentence defense can save her PHRA claim. It is beyond dispute—as Plaintiff herself admitted repeatedly during her deposition—that she suffered *no* harassment or otherwise inappropriate conduct after November 5, 2018. (A-628; 630-632). Thus, there are no allegations of misconduct during the 180 days prior to the filing of her Charge on July 24, 2019, and her PHRA claim should be dismissed as untimely.

**II.     There Is No Genuine Dispute that Summary Judgment Should Be Granted on Plaintiff's Claims**

    **A.     Plaintiff Concedes that the Alleged Conduct Does Not Constitute Unlawful Harassment or Gender Discrimination**

In their Motion for Summary Judgment, Defendants argue extensively that Plaintiff has failed to establish a *prima facie* case for harassment or discrimination. (D.I. 80 p. 8-11). Defendants argue, *inter* alia, that Plaintiff cannot demonstrate the alleged conduct, even if accepted as true, constitutes severe or pervasive behavior. (D.I. 80 at pp.8-11). Plaintiff failed to respond to that argument in her opposition papers. It is well settled both within and outside the

2

Third Circuit that the claims are therefore considered abandoned. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003); *Carroll v. Lancaster County*, 301 F. Supp. 3d 486, 499 (E.D. Pa. 2018); *Hackett v. Community Behavioral Health*, 2005 WL 1084621, at *6 (E.D. Pa. May 6, 2005) (internal citations omitted). In accordance with well-settled law, Plaintiff has abandoned her harassment and discrimination claims by failing to respond to Defendants' arguments that she has failed to meet her *prima facie* claim and, consequently, Plaintiff's claims must be dismissed.

**B.     Plaintiff's Proxy Argument Is Unsupported by Law**

Plaintiff attempts to save her claim by arguing that Mr. Roman was a proxy for MEF and so MEF should be disqualified from asserting the *Ellerth-Faragher* defense. She fails to cite a single Third Circuit case for this proposition, nor is there any such case law in the Third Circuit. As a matter of law, this argument should be flatly rejected by the Court as it is without legal support.

Moreover, Plaintiff's suggestion runs contrary to the entire purpose of Title VII, namely, the prevention and remediation workplace harassment. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764 (1998). Providing employers with limitations for liability when the employer effects reasonable anti-harassment measures encourages the use of such measures and serves to limit the harassing behavior before it becomes severe or pervasive. *Id.*

Indeed, here, MEF's antiharassment policy and training directly serves the purpose of Title VII. Plaintiff alleged that she was subject to harassment and, per the MEF policy, *which Plaintiff herself revised*, went directly to Dr. Pipes with her allegations. (SOF 73). Upon receiving the complaint, Dr. Pipes took immediate and significant remedial action in accordance with the purpose of Title VII's goals of prevention and remediation, after which, as Plaintiff herself admits, there was never another issue. That Plaintiff seeks to cut off Defendants' *Ellerth-*

3

*Faragher* defense undermines the doctrine's incentive of creating functioning anti-harassment programs.  *Ellerth*, 524 U.S. at 764.

      **C.**    **There Is No Genuine Dispute that the *Ellerth-Faragher* Defense Bars Plaintiff's Claims**

If this Court determines that Plaintiff has indeed shown a *prima facie* case despite failing to respond to Defendants' arguments otherwise, Defendants still are entitled to dismissal of Plaintiff's claims pursuant to the *Ellerth-Faragher* defense.  As an initial matter, Plaintiff concedes that she was not subject to any tangible employment action.  Defendants argued that no tangible employment action occurred in their motion for summary judgment, and Plaintiff failed to address this argument in her response.  Consequently, Plaintiff has abandoned any argument to the contrary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003); *Carroll v. Lancaster County*, 301 F. Supp. 3d 486, 499 (E.D. Pa. 2018); *Hackett v. Community Behavioral Health*, 2005 WL 1084621, at *6 (E.D. Pa. May 6, 2005) (internal citations omitted).

Thus, for Defendants to successfully invoke the *Ellerth-Faragher* defense, they must show: (1) that MEF took reasonable steps to prevent and promptly correct any allegedly unlawful harassing behavior; and (2) that Plaintiff unreasonably failed to take advantage of the remedial measures available to her.  Defendants have successfully established both.

First, as set forth in Defendants' Motion and uncontested by Plaintiff in her response, MEF had an anti-harassment policy in place, which Plaintiff herself gave training on to all MEF employees.  (A-664-665).  Although Plaintiff in her response complains that Defendants produced more than one copy of MEF's anti-harassment policy, each policy is identified by date and block cited in Defendants' motion.  (D.I. 80 at p.15; SOF ¶ 14).  In fact, the existence of a continuously updated policy serves only to demonstrate that MEF continually reviewed and

updated its policy. Plaintiff herself drafted the policy that was in effect when she made her compliant to Dr. Pipes. (SOF ¶ 11-12). Thus, Plaintiff makes no real challenge to the existence of an effective anti-harassment policy and program at MEF. Therefore, Defendants have met the first part of *Ellerth-Faragher's* first prong by showing that MEF took reasonable steps to prevent harassment. *See, e.g., Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 323, 329 (3d Cir. 2015).

Second, upon receipt of Plaintiff's handwritten letter on October 31, 2018, Dr. Pipes immediately took steps that Plaintiff admits *permanently stopped all allegedly offensive conduct*. It is undisputed that the steps taken by MEF in response to Plaintiff's allegations *prevented further alleged harassment*. (A-628; 630-632). Plaintiff claims that she thinks Dr. Pipes did not believe her allegations and therefore Defendants cannot establish part of the first prong *Ellerth-Faragher* (that Defendants failed to take remedial action). This argument fails as a matter of law. The defense does not examine the subjective beliefs of the employer; instead, it examines what steps the employer took to abate the alleged misconduct. Here there is no dispute that Dr. Pipes took immediate and significant action in response to Plaintiff's complaint. As a result, it is beyond dispute that Defendants have satisfied their burden to show that MEF took reasonable steps both to prevent and to correct any allegedly unlawful harassing behavior and have satisfied the first prong of the defense.

Third, it is beyond dispute that Plaintiff unreasonably failed to take advantage of the remedial measures made available to her. Plaintiff waited at least *nine months* after the alleged comments were made at dinner in early 2018. Plaintiff argues that she was scared to report the alleged conduct because she believed that Mr. Roman had access employee's email accounts.

Yet she admits that when she did make the report to Dr. Pipes, she did so via a handwritten letter so as to avoid electronic communications. (D.I. 81 at p.11).

Plaintiff ignores, of course, the fact that she was responsible for MEF's human-resources administration and as such had a duty to report any perceived or alleged misconduct immediately. As Defendants argue in their motion for summary judgment, specific knowledge of the reporting process cuts against a plaintiff's claim that her delay in reporting was reasonable. (D.I. 80 at pp.17-18); *Jones v. Southeastern Pa. Transp. Authority*, 796 F.3d 323, 329 (3d Cir. 2015). The timeline is undisputed—Plaintiff waited more than nine months to report what she claims was harassing behavior. As a matter of law, her delay satisfies the second prong of the *Ellerth-Faragher* defense. *See* D.I. 80 at pp. 17-18.

Plaintiff's argument relies on *Minarsky v. Susquehanna County*, 895 F.3d 303, 314 (3d Cir. 2018). The facts of that case are easily distinguishable from those here and Plaintiff's reliance on that case is misplaced. In *Minarsky*, the plaintiff worked in an isolated location with her harasser who, over an extended period, attempted to physically assault the plaintiff and reacted severely when she resisted his advances, regularly threatening her job. 895 F.3d at 314-15. The court found that the explicit threats of reprisal and the isolated work environment between the two individuals, as well as other compelling factors when taken together established a genuine fear of reprisal. 895 F.3d at 317.

Here, there is no such evidence. Plaintiff was responsible for the human-resources administration and management of MEF. She had a direct and open line of communication with MEF's president, Dr. Pipes. Plaintiff herself was directly involved in the decision to terminate Tiffany Lee and testified that the allegations of former employees Frank and Szott were manufactured. (A-691; 575; 747). Despite having supported one termination and having

6

admitted that the other two former employees fabricated their allegations, Plaintiff now seeks to shift her opinion in a self-serving manner in order to claim she had a reasonable fear of retaliation. Because Plaintiff cannot demonstrate a genuine fear of retaliation, she is foreclosed from arguing that her nine-month delay in reporting the alleged misconduct was reasonable under *Minarsky*. As a result, Defendants have met their burden under *Ellerth-Faragher* and the claims should be dismissed.

### III.    There Is No Genuine Dispute that Plaintiff Removed Herself from the Job Market

As set forth in Defendants' Motion, Plaintiff testified at deposition that she *is not seeking employment*, that she does not want to work for someone else, that she wishes to be self-employed and has elected to focus on growing her bookkeeping business. (D.I. 80 at pp.19-20). Under the law of the Third Circuit, Plaintiff has failed to mitigate her damages and is precluded from an award of front pay. *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860 (3d Cir. 1995). The only response to this argument by Plaintiff is one paragraph of unsupported statements of "fact" without citation to the record. (D.I. 81 at p.17). Arguments without citation and without any support in the factual record cannot serve to avoid summary judgment. *Parker* 823 Fed.Appx. at 72. Based on Plaintiff's own sworn testimony, she has withdrawn from the labor market in favor of a different career path—trying to grow her own business—and she is therefore precluded from an award of front pay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment pursuant to *Fed. R. Civ. P.* 56 and dismiss Plaintiff's Complaint in its entirety.

CLARK HILL PLC

| | |
|---|---|
| *~of counsel~* | */s/ Kevin Levine* |
| Margaret M. DiBianca, Esq. (DE No. 4539) | Kevin Levine, Esq. (PA Bar No. 326492) |
| CLARK HILL PLC | Two Commerce Square |
| 824 N. Market Street, Ste. 710 | 2001 Market Street, Ste. 2620 |
| *Admitted Pro Hac Vice* | Philadelphia, PA 19103 |
| Wilmington, DE 19801 | P: (215) 640-8500 |
| P: (302) 250-4748 | F: (215) 640-8501 |
| F: (302) 421-9439 | Klevine@clarkhill.com |
| mdibianca@clarkhill.com | |
| Dated: March 23, 2021 | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

      I, Kevin Levine, Esquire, hereby certify that on March 23, 2021, the foregoing document was served upon the following parties via CM/ECF:

Erica A. Shikunov, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
erica@dereksmithlaw.com


                                                 */s/ Kevin Levine*
                                                 Kevin Levine, Esq.