**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| MARNIE O'BRIEN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 2:19-cv-06078-JMG |
| | : | |
| THE MIDDLE EAST FORUM, *et al.*, | : | |
| Defendants. | : | |

_____

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                              **May 28, 2021**

**I.    OVERVIEW**

Boundaries and respect are commensurate features of the American workplace.  The lack of

one generally suggests a lack of the other.  Plaintiff Marnie O'Brien alleges that neither were

present during her time as an employee of the Middle East Forum ("MEF").  Ms. O'Brien claims

that, throughout her tenure, MEF Director Gregg Roman subjected her to a sustained pattern of

sexual harassment and discrimination.  As a result, Ms. O'Brien brought suit in the present matter

against MEF, Mr. Roman, and MEF President Dr. Daniel Pipes for gender discrimination under the

Pennsylvania Human Relations Act and Title VII of the Civil Rights Act of 1964.  Defendants

request summary judgment on each of Plaintiff's claims and move to strike affidavits attached to

Plaintiff's Response in Opposition.  Plaintiff likewise seeks summary judgment on Defendants'

counterclaim against her for abuse of process.  For the reasons set forth in greater detail below, all

motions are denied.

## II. FACTUAL BACKGROUND

### A. Allegations

Marnie O'Brien served as Director of Finance and Administration at MEF from 2016 until 2020. Compl. ¶ 15, ECF No. 1; Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 1, ECF No. 79. During her tenure, Plaintiff alleges that she was subjected to crude sexual comments and unwanted sexual advances by her boss, Defendant Gregg Roman. Compl. ¶¶ 18-22. According to Plaintiff, this behavior included making unsolicited remarks about Plaintiff's sex life, propositioning Plaintiff and her coworkers for sex, spreading rumors about Plaintiff's sex life to her coworkers, and using his position of authority to control and retaliate against women who rejected his unwanted advances. *Id.* ¶¶ 18, 22, 31, 44-45. Plaintiff also claims that one of her coworkers informed her that Mr. Roman attempted to force himself on her during a business trip to Israel. *Id.* ¶ 34. Upon learning of this incident, Plaintiff reported Mr. Roman's conduct to Dr. Daniel Pipes via a hand-written letter on November 1, 2018. *Id.* ¶¶ 27, 35.

On November 5, 2018, Dr. Pipes called a staff meeting to discuss the allegations against Mr. Roman. *Id.* ¶ 36. Dr. Pipes subsequently announced that Mr. Roman's job duties would be modified to preclude him from acting in a supervisory capacity or working on-site without prior approval. *Id.* ¶ 40. Plaintiff contends that within a few months of instituting these measures, Dr. Pipes gradually began allowing Mr. Roman to resume his previous responsibilities. *Id.* ¶ 42. In March 2019, Plaintiff alleges that she became aware of a rumor purportedly initiated by Mr. Roman that Plaintiff had sex with her former boss in exchange for her job. *Id.* ¶ 44. Plaintiff asserts that Dr. Pipes refused to investigate this claim, and told her that Mr. Roman would not supervise her upon his return to the office regardless. *Id.* ¶ 49. On June 3, 2019, Dr. Pipes informed Plaintiff that, despite her objections, she would have to work with Mr. Roman on a company-wide audit. *Id.*

¶ 50; App. at 143-144, 645:19-646:13.  Plaintiff believed that she had "no choice but to comply" with Dr. Pipes' directive.  App. 143-144.

Plaintiff brought the underlying suit against MEF, Dr. Pipes, and Mr. Roman (collectively "Defendants") alleging gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") on December 23, 2019.  *See generally* Compl.  Presently before the Court is Defendants' Motion for Summary Judgment, which seeks dismissal of Plaintiff's PHRA claim as untimely, as well as her Title VII claim based on her purported failure to demonstrate severe or pervasive discrimination or the existence of *respondeat superior* liability.  Defs.' Mot. 3-18.  Defendants' Motion also seeks dismissal of Plaintiff's claim for front-pay due to her alleged failure to mitigate damages by removing herself from the job market.  *Id.* at 19-20.  Additionally, Defendants filed a Motion to Strike three affidavits attached to Plaintiff's Response in Opposition, arguing that the statements therein lack a basis in personal knowledge and that they contradict prior deposition testimony.  Defs.' Mot. to Strike 3-11. Also before the Court is Plaintiff's Motion for Summary Judgment, wherein Plaintiff argues that Defendants' have failed to demonstrate the requisite overt act and harm necessary to sustain their counterclaim for abuse of process.  Pl. Mot. 5-9.

### B.    Procedural History

On July 24, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging gender-based discrimination against Defendants in violation of Title VII and the PHRA.  *See* Defendants' Statement of Undisputed Facts ("DSUF") ¶ 1, ECF No. 80.  On December 17, 2019, Plaintiff dual-filed a subsequent Charge of Discrimination with EEOC and the Pennsylvania Human Relations Commission ("PHRC") alleging unlawful retaliatory conduct subsequent to the first charge.  PSUF ¶ 8.  Plaintiff filed a Complaint with this Court on December 23, 2019 alleging sexual harassment and gender discrimination under Title VII

(Count I) and the PHRA (Count II). *See generally* Compl. On January 27, 2020, Plaintiff filed a second Complaint alleging unlawful retaliation by Defendants. PSUF ¶ 9. The Parties stipulated to consolidate these Complaints on March 10, 2020. *See* ECF No. 16.

On April 10, 2020, Defendants filed an Answer along with four counterclaims against Plaintiff and two third-party claims against her boyfriend Matthew Ebert. *See* ECF Nos. 20, 21. Defendants' counterclaims included tortious interference with business relations (Count I), abuse of process (Count II), and civil conspiracy (Count III). *Id.* On August 3, 2020, Defendants filed a Motion to Dismiss Plaintiff's retaliation claim. *See* ECF No. 36. The Court granted Defendants' Motion on August 6, 2020. *See* ECF No. 37. On December 15, 2020, the Parties stipulated to dismissal of the third-party complaints against Mr. Ebert. *See* ECF No. 67. Defendants subsequently stipulated to dismissal of Count I (tortious interference) and III (civil conspiracy) of the counterclaims against Plaintiff. *See* ECF No. 76.

Plaintiff filed a Motion for Summary Judgment seeking dismissal of Count II of Defendants' counterclaims on January 28, 2021. *See* ECF No 79. That same day, Defendants filed a Motion for Summary Judgment seeking dismissal of Plaintiff's gender discrimination claims under Title VII and the PHRA. *See* ECF No. 80. On February 11, 2021, the Parties each filed their Responses in Opposition to the other Party's Motion. *See* ECF Nos. 81, 82. Defendants filed a Motion to Strike Portions of the Declarations Filed in Support of Plaintiff's Response on March 5, 2021. *See* ECF No. 85. On March 19, 2021, Plaintiff filed a Response in Opposition to Defendants' Motion to Strike. *See* ECF No. 87. Defendants subsequently filed a Reply in Further Support of their Motion for Summary Judgment on March 23, 2021.[1] *See* ECF No. 89.

---

[1] The Court granted Defendants' Motion for Leave to File a Reply Brief in Further Support of their Motion for Summary Judgment on March 5, 2021. *See* ECF No. 84.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020).  Likewise, a factual dispute is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).  Instead, the court's task is to determine whether there is a genuine issue of fact for trial. *Id.*

## IV.    ANALYSIS

### a.    Plaintiff's PHRA Claim

The PHRA prohibits employers from discharging or otherwise discriminating against an employee on the basis of sex.  42 Pa. Stat. Ann. § 955(a) (West 2020).  An employee seeking to vindicate their rights under the PHRA must first submit their claims to the PHRC for investigation and possible conciliation.  § 962(c)(1).  The complaint must be filed "within one hundred eighty days after the alleged act of discrimination."  § 959(h).  Claimants who do not timely "avail themselves of the administrative process…[are] barred from the judicial remedies" authorized by the PHRA. *Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645 (E.D. Pa. 2020) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997)).

Courts in this District analyze PHRA claims under the same framework as those brought pursuant to Title VII. *English v. Turn 5, Inc.*, No. 19-5277, 2020 WL 6118780, at *6 (E.D. Pa. Oct.

16, 2020).  Title VII claims involving "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Discrete acts, such as termination, failure to promote, or denial of transfer, constitute "separate actionable unlawful employment practice[s]." *Id.* at 114.  A claimant can only file charges covering discreet acts that occur within the statutory limitations period.  *Id.*  In contrast, ongoing discriminatory conduct which gives rise to a hostile work environment claim is subject to an equitable exception.  *See id.* at 115.

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir 2013).  A continuing violation involves a series of separate acts which together establish a pattern of discrimination.  *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  In discerning the existence of such a pattern, the court should consider the frequency of these acts and whether they concern the same subject matter.  *Lamb v. Montgomery Township*, 734 F. App'x 106, 111 (3d Cir. 2018).  The plaintiff must ultimately demonstrate that the allegedly discriminatory acts were all "part of the same unlawful employment practice and that least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165 (citing *Morgan*, 536 U.S. at 122).  To this end, a hostile work environment claim filed within 180 days of at least one act contributing to an ongoing violation is timely under the PHRA.  *See id.* at 166-67; *English*, 2020 WL 6118780, at *6.

Defendants argue that because Plaintiff filed her first PHRA charge on July 24, 2019, Plaintiff's allegations must pertain to conduct occurring on or after January 25, 2019 in order to be timely.  Defs.' Mot. 6.  Since Plaintiff testified that Mr. Roman did not make any harassing comments or attempt any sexual advances toward her after November 5, 2018, Defendants assert that Plaintiff's claims falls outside of the 180-day statutory period.  *Id.*  In response, Plaintiff

maintains that she was subject to a clear and ongoing pattern of discriminatory conduct that continued up until she filed her PHRA claim. Pl. Resp. 13. Plaintiff states that after November 5, 2018, she learned of rumors circulating in the office about her sex life purportedly started by Mr. Roman. *Id.* Additionally, Plaintiff asserts that she was forced to work with Mr. Roman on a project during the summer of 2019 over her repeated objections. Plaintiff therefore contends that her PHRA complaint is not time-barred because it includes allegations of ongoing discriminatory conduct occurring within the statutory limitations period. *Id.* at 14.

The Court finds that there is a genuine factual dispute concerning the timeliness of Plaintiff's claims under the PHRA. Plaintiff states that she only learned of rumors allegedly started by Mr. Roman after November 5, 2018. App. 633:17-635:1, 719:3-719:20. These rumors purportedly included speculation that Plaintiff had sex with her former boss in exchange for her job and that she enjoyed oral sex. *Id.* According to Plaintiff, she was unaware of when these rumors started or how long they continued. *Id.* at 632:18-635:6. Defendant insists that these rumors started before November 5, 2018 and did not continue into the statutory period. Defs.' Reply 1-2.

Plaintiff also alleges that she was forced to work with her alleged harasser, Mr. Roman, on a company-wide audit in or around June 2019. App. 645:19-646:13; Pl. Resp., Ex. A ¶ 32. According to Plaintiff, it was her understanding that Mr. Roman would no longer be her supervisor or have access to her work product after November 5, 2018. App. 143-144. Plaintiff raised her objections concerning the audit to Dr. Pipes on June 4, 2019, but Dr. Pipes told her to "put [her] personal feelings aside" and that he "cannot be refused on this." *Id.* In response, Plaintiff indicated that she felt that she had "no choice but to comply." *Id.* Defendants claim that Plaintiff was not

actually required to work with Mr. Roman based on Plaintiff's comment that she did not have any interactions with him after he took over the audit.[2]  Defs.' Reply 2 (citing App. 650:3-650:14).

These competing accounts, supported by sworn deposition testimony and contemporaneous records, represent a genuine dispute of material fact that precludes summary judgment concerning the timeliness of Plaintiff's PHRA claim.  *See* Fed. R. Civ. P. 56(c)(1)(A).  A jury could reasonably find that these claims involve "similar conduct by the same individuals, suggesting a persistent, ongoing pattern" of discrimination.  *Mandel*, 706 F.3d at 165.  Plaintiff's allegations pertain to conduct allegedly occurring within the 180-day statutory period which, if found to constitute a continuing violation of the PHRA, would be timely under the statute.  Therefore, Plaintiff's PHRA claim must survive at this stage.

### b.    Plaintiff's Title VII Hostile Work Environment Claim

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to [their] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Plaintiffs can demonstrate a Title VII violation "by proving that sexual harassment created a hostile or abusive work environment."  *Hitchens v. Montgomery County*, 278 F. App'x 233, 235 (3d Cir. 2008) (quoting *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 (3d Cir. 1999)).  To advance a hostile work environment claim, the plaintiff must establish that: (1) they suffered intentional discrimination because of their sex; (2) the discrimination was severe or pervasive;[3] (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally

---

[2] It is not clear when Mr. Roman "took over the audit" and Defendants do not offer evidence of when this may have occurred.  This adds further weight to the conclusion that Defendants have not demonstrated the absence of any genuine factual dispute concerning these allegations.

[3] The use of the disjunctive "or" suggests that severity and pervasiveness are alternate possibilities, meaning that the employee can satisfy their burden by offering evidence of harassment that is severe enough to create an abusive environment or conduct that is less severe but occurs with such frequency as to alter the conditions of employment.  *See Castleberry v. STI Group*, 863 F.3d 359, 264 (3d Cir. 2017).

affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior*

liability. *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017). In evaluating these claims,

the court must consider the totality of the circumstances, including the frequency and severity of the

discriminatory conduct, whether it was threatening or humiliating, and whether it unreasonably

interfered with the employee's performance. *Mandel*, 706 F.3d at 168.

Defendants assert that Plaintiff has failed to establish that she was subject to severe or

pervasive discrimination, or the existence of *respondeat superior* liability on behalf of MEF. Defs.'

Mot. 8, 11. According to Defendants, MEF's work environment lacked the "physicality,

humiliation, severity, or frequency" required to maintain a hostile work environment claim. *Id.* at

9. Defendants contend that Plaintiff's only allegations of harassment concerned Mr. Roman's

supposed sexually explicit comments during a dinner with Plaintiff in early 2018, his purported

attempts to pit Plaintiff's coworkers against her, and the fact that Plaintiff was directed to work with

Mr. Roman after reporting his misconduct. *Id.* at 6-8. These claims, Defendants argue, do not

evidence a work environment "so permeated with discriminatory conduct that it objectively altered

the conditions of her employment." *Id.* at 9 (citing *Greer v. Mondelez Global, Inc.*, 590 F. App'x

170, 173 (3d Cir. 2014)). Additionally, Defendants reason that because Plaintiff never worked with

Mr. Roman after she submitted her complaint to Dr. Pipes, she cannot sustain her burden of

establishing employer liability on behalf of MEF. *Id.* at 11-12.

Plaintiff counters that she has offered evidence sufficient to raise a genuine issue of material

fact which precludes summary judgment. Pl. Resp. 6-8. These include claims that coworkers

gossiped about Plaintiff's sex life in the office and that Mr. Roman made sexually explicit

comments to Plaintiff, leered at Plaintiff, propositioned Plaintiff, perpetuated rumors concerning her

sex life, and cultivated a culture of fear and paranoia in the office. *Id.* at 7-8. Additionally, Plaintiff

contends that she was forced to work with Mr. Roman even after he was disciplined for sexual

harassment. *Id.* at 7. Plaintiff argues that these circumstances were sufficiently pervasive and severe to support her hostile work environment claim. *Id.* at 8. Additionally, Plaintiff asserts that she has offered sufficient evidence to demonstrate employer liability by showing that Defendants did not take reasonable steps to address the harassment allegations against Mr. Roman and that her delay in reporting the allegations was objectively reasonable. *See id.* at 10-11.

### i. Severe or Pervasive Conduct

Conduct is severe or pervasive when it alters the conditions of employment and creates an abusive work environment. *Moody v. Atlantic City Board of Education*, 870 F.3d 206, 214 (3d Cir. 2017). "Simple teasing, offhand comments, and isolated incidents" are generally insufficient to satisfy this burden. *Greer*, 590 F. App'x at 173. Allegations of sexually charged comments, attempts to pressure coworkers into engaging in sexual acts, harassment outside of work, derisive commentary concerning the intimate details of an employee's life, and attempts to intimidate may raise a triable question of fact. *See Moody*, 706 F.3d at 215; *Mercado v. Sugarhouse HSP Gaming, L.P.*, No. 18-3641, 2019 WL 3318355, at *6 (E.D. Pa. July 23, 2019). The court should consider these circumstances in their entirety, rather than as individual incidents, to determine whether the alleged acts were collectively severe or pervasive. *Mandel*, 706 F.3d at 168.

Plaintiff alleges that during her employment with MEF, she was subjected to crude sexual comments, unsolicited sexual advances, repeated harassment, and intimidation by Mr. Roman. On one occasion, Plaintiff claims that Mr. Roman told her that "he likes older women." App. 511:11-521:23. On a different occasion, Mr. Roman invited Plaintiff to dinner to discuss work matters, during which he allegedly stated that "non-jewish women were made for sex." *Id.* Plaintiff also maintains that Mr. Roman discussed his marital problems, said that he "needed a release," and asked Plaintiff about her dating life. *Id.* Additionally, Plaintiff alleges that Mr. Roman stated multiple times that he had forgotten some papers and asked her to return to the office with him to

retrieve them. *Id.* Plaintiff claims that she became so uncomfortable during this dinner that she informed Mr. Roman that she was not going to have sex with him. *Id.*

According to Plaintiff, Mr. Roman would often leer at women's legs, breasts, and buttocks during the workday. Pl. Resp., Ex. A ¶ 7. In one instance, Plaintiff claims that Mr. Roman came into her office and stared at her open gym bag containing a pair of her underwear. *Id.* Plaintiff also states that Mr. Roman would often insist on going into his office, where he would "sit unnaturally close" to his female coworkers. *Id.* ¶ 8. Mr. Roman allegedly discussed his own sex life in the office and would ask Plaintiff about her sex life constantly. *Id.* ¶ 9. Plaintiff also claims that Mr. Roman started a rumor about her sleeping with her former boss in exchange for her job and gossiped about her sex life to her coworkers. App. 631:19-637:1; Pl. Resp., Ex. C ¶ 11. Likewise, Plaintiff later found out that other coworkers discussed her sex life while in the office, including the rumor that she enjoyed, among other things, having oral sex. App. 719:3-719:16, 1558:3-1559:21.

Plaintiff further alleges that Mr. Roman fostered widespread fear and paranoia throughout the office, telling employees that he could hack into their computers and access their emails. *Id.* at 591:15-592:13. Mr. Roman purportedly had a surveillance camera in his office and would allude to the presence of other cameras as well. Pl. Resp., Ex. A at ¶ 17. When employees attempted to speak to Dr. Pipes, Mr. Roman would allegedly "become apoplectic" if they did so without his knowledge. *Id.* ¶ 14. Plaintiff also states that Mr. Roman would ask female staff members to report to him what other female staff members were doing, effectively forcing them to spy on one another. *Id.* ¶ 17. Furthermore, Plaintiff claims that Mr. Roman would ask his sister, who also worked in the office, to eavesdrop on other employees. *See* App. 573:19-574:2. Mr. Roman also purportedly tried to undermine Plaintiff's authority by directing Plaintiff to act in a supervisory capacity, only to tell other employees not to listen to her. App. 561:8-563:21. Other former MEF employees report that Mr. Roman would try to pit them against Plaintiff by telling them that she wanted to discipline

them and that she was grabbing for power. *See, e.g.*, Pl. Resp., Ex. C ¶ 15. Plaintiff believes that these behaviors were calculated to prevent female employees from discussing his harassing behaviors amongst themselves. *Id.*, Ex. A ¶ 12.

Sometime in early 2018, Mr. Roman asked Plaintiff to accompany him on a business trip to Israel. *Id.* at 527:14-528:14. After Mr. Roman informed Plaintiff that he rented a two-room Airbnb, Plaintiff told Mr. Roman that she was not comfortable with that arrangement and requested to stay in a hotel. *Id.* Mr. Roman subsequently uninvited Plaintiff and told her that he would ask someone else to join him instead. *Id.* Upon his return from the trip, Mr. Roman purportedly told Plaintiff that Lisa Barbounis, her coworker who ended up accompanying Mr. Roman to Israel, had been hitting on him. *Id.* at 537:17-537:18. Plaintiff also claims that Mr. Roman bragged about convincing an intern that "he forgot some paperwork back in his room," which ultimately led to them returning to his Airbnb to have sex. *Id.* at 552:12-553:9.

In March 2018, Plaintiff attended the American Israel Public Affairs Committee ("AIPAC") conference in Washington, D.C with her coworkers. *Id.* at 529:16-530:7. Following a networking event, Mr. Roman invited MEF employees back to his Airbnb for an after party. *Id.* at 529:19-531:21. During this party, Mr. Roman allegedly took Plaintiff into his bedroom, closed the door, and offered Plaintiff some marijuana. *Id.* Plaintiff states that she felt uncomfortable and subsequently left the room. *Id.* Later that same evening, Plaintiff claims that she witnessed Mr. Roman put his arms around other female coworkers and pulled one of them onto his lap. *Id.*

On October 30, 2018, Plaintiff had an argument with coworker Lisa Barbounis. *Id.* at 565:5-570:10. The following day, Plaintiff met with Ms. Barbounis to reconcile their differences. *Id.* During this conversation, Ms. Barbounis told Plaintiff that she was worried about losing her job and that something had happened between her and Mr. Roman during their trip to Israel. *Id.* Mr. Roman allegedly propositioned Ms. Barbounis and, when she refused his advances, started yelling

about wanting oral sex. *Id.* Ms. Barbounis told Plaintiff that she became so frightened that she retreated into her bedroom and hid a knife under her pillow for protection. *Id.* Plaintiff also notes that after Mr. Roman and Ms. Barbounis returned from this trip, Mr. Roman allegedly asked Plaintiff to start documenting all of Ms. Barbounis's performance deficiencies and told her that they needed to prepare to "get her out" because she was not doing her job. *Id.* at 538:12-543:7.

Plaintiff reported Mr. Roman's conduct to Dr. Pipes on November 1, 2018 by sending him a hand-written letter.[4] *Id.* at 589:18-590:24. Dr. Pipes thereafter conducted interviews with staff and held a meeting to discuss the allegations against Mr. Roman on November 5, 2018. *Id.* at 597:12-613:6. In response to these allegations, Dr. Pipes announced that Mr. Roman would be subjected to certain punitive measures, including not being allowed in the office without prior approval, reduced responsibilities, and diminished authority. *Id.* Although Dr. Pipes stated that Mr. Roman would no longer maintain a supervisory role over administrative staff or be involved in financial and accounting matters at MEF, Plaintiff claims that Mr. Roman slowly regained his responsibilities and authority over time. *Id.* at 622:2-630:15. In or around June 2019, Dr. Pipes directed Plaintiff, over her objections, to work with Mr. Roman on an audit of MEF. *Id.* at 143-144, 645:19-646:13. Plaintiff states that she believed it was only a matter of time until Mr. Roman returned to his former position of power. *Id.* at 640:17-640:24.

Upon review of the record evidence submitted by the Parties, the Court finds that a jury could reasonably determine that Plaintiff endured severe or pervasive discrimination during her tenure at MEF. Plaintiff's claims raise a genuine factual dispute because they are supported by relevant portions of the record, including affidavits, depositions, and other contemporaneous documents. *See Funayama v. Nichia America Corp.*, No. 08-5599, 2011 WL 1399844, at *10 (E.D.

---

[4] Plaintiff maintains that the letter was hand-written because she was concerned that Mr. Roman was able to hack into her computer and see what she was writing before she submitted it to Dr. Pipes. App. 589:18-592:13.

Pa. Apr. 13, 2011). Although Mr. Roman denies the allegations against him, the court must view these facts in the light most favorable to Plaintiff. *Moody*, 870 F.3d at 215. These specific, nonconclusory claims go well beyond a few isolated incidents or offhanded comments, and evidence an ongoing pattern of harassment which could lead a reasonable factfinder to conclude that these purported conditions created an abusive work environment for Plaintiff.

### ii.    *Respondeat Superior* Liability

An employer may be vicariously liable "for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Hitchens*, 278 F. App'x at 235-36 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Plaintiffs may demonstrate *respondeat superior* liability by providing evidence that their supervisor subjected them to a "tangible employment action," such as discharge, demotion, or undesirable reassignment. *Id.* (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). Where there is no evidence of a tangible employment action, the employer can avoid liability by showing that they (1) exercised reasonable care to prevent and correct sexually harassing behavior and (2) that the employee unreasonably failed to avail themselves of preventative or corrective opportunities provided by the employer. *Minarsky v. Susquehanna County*, 895 F.3d 303, 310 (3d Cir. 2018). "The cornerstone of this analysis is reasonableness: the reasonableness of the employer's preventative and corrective measures, and the reasonableness of the employee's efforts…to report misconduct and avoid future harm." *Id.* at 311.

Defendants argue that because Plaintiff was not terminated, demoted, or reassigned, she was not subject to a tangible employment action. Defs.' Mot 13. Accordingly, Defendants contend that Plaintiff's claims are barred by the *Faragher-Ellerth* affirmative defense. *Id.* at 14. Defendants assert that MEF took prompt and reasonable steps to prevent and correct concerns raised by Plaintiff regarding Mr. Roman's behavior. *Id.* Consistent with company policy, Defendants

maintain that Dr. Pipes' intervention, which included meeting with staff individually, holding a full

staff meeting, and changing the scope of Mr. Roman's role with the company, permanently

resolved the issue. *Id.* at 15-16. With regards to the second prong of the defense, Defendants claim

that Plaintiff delayed reporting the alleged misconduct for at least nine months, which was

unreasonable considering her familiarity with office reporting procedures. *Id.* at 17-18.

Plaintiff argues that Defendants have not satisfied either prong of the *Faragher-Ellerth*

defense. Pl. Resp. 8. While an anti-harassment policy may demonstrate an employer's exercise of

reasonable care, Plaintiff maintains that the policy must actually be effective so as to protect

employees. *Id.* Plaintiff asserts that the mitigation measures imposed on Mr. Roman were only

temporary and that her subsequent complaints about his behavior went unaddressed. *Id.* at 10.

Furthermore, Plaintiff reasons that she did not fail to avail herself of MEF's corrective measures

because her fear of reprisal by Mr. Roman was objectively reasonable. *Id.* at 12.

Mr. Roman is the Director of MEF and Defendants do not contest that he held a position of

authority over Plaintiff during her tenure with the organization. App. 808:16-808:20. Plaintiff, on

the other hand, offers no argument concerning any tangible employment action taken against her by

Mr. Roman. [5] Therefore, the appropriate inquiry for determining employer liability in this matter is

confined to whether Defendants can demonstrate the absence of a material factual dispute

concerning the *Faragher-Ellerth* factors. Upon review of the evidence proffered by the Parties, the

Court finds that Defendants have not met this burden.

In arguing that they exercised reasonable care in addressing the allegations of harassment

against Mr. Roman, Defendants emphasize that they maintained a grievance procedure with which

Plaintiff was familiar. Defs.' Mot. 15. However, the mere existence of a policy is not in it of itself

---

[5] Failure to address a claim in a brief opposing summary judgement constitutes abonnement of that claim. *See Carroll v. Lancaster County*, 301 F. Supp. 3d 486, 499 (E.D. Pa. 2018).

sufficient to satisfy the first element of the *Faragher-Ellerth* analysis. *Minarsky*, 895 F.3d at 310. Plaintiff contends that Defendants' procedure was not effective or reasonable because Dr. Pipes did not fully investigate and rectify the problem. Pl. Resp. 10. In support of her claim, Plaintiff notes that Dr. Pipes admitted that he "had his doubts from the very start about these allegations of sexual harassment" and that he was more concerned with Mr. Roman's "business practices." App. 1196:17-1196:23. Furthermore, Plaintiff contends that the corrective measure imposed against Mr. Roman were only temporary, and that shortly thereafter he started to "come back one inch at a time." *Id.* at 622:2-630:15. Reports of Mr. Roman's harassment allegedly continued even after MEF took these purported corrective measures. *Id.* at 634:1-635:6; Pl. Resp., Ex. C ¶¶ 34, 36. Plaintiff also claims that Dr. Pipes declined to investigate whether Mr. Roman was again spreading rumors about her sex life and that Dr. Pipes forced Plaintiff to work with Mr. Roman after telling her that Mr. Roman would no longer have access to her work product. App. 143-144, 645:19-646:13, 1155:9-1155:20.

The Court finds that a reasonable jury could conclude that MEF did not prevent and correct the alleged harassment with reasonable care. The Parties have offered conflicting evidence concerning the extent and effectiveness of Dr. Pipes' mitigation efforts. Additional evidence in the record also weighs against granting summary judgment on this issue. Mr. Roman would purportedly "become apoplectic" if employees attempted to speak to Dr. Pipes without his knowledge. Pl. Resp., Ex. A ¶ 14. Plaintiff claims that Dr. Pipes spent very little time investigating her allegations and made it clear shortly thereafter that the matter was to be considered resolved. *Id.* ¶ 26. Mr. Roman's sister was allegedly present during the staff meeting where Dr. Pipes solicited information regarding Mr. Roman's conduct, which apparently made other employees uncomfortable and less forthcoming. App. 597:12-613:6. Likewise, female employees were purportedly apprehensive to report claims against Mr. Roman due to a culture of fear and paranoia

fostered by Mr. Roman himself. *Id.* at 591:15-592:13. These allegations, viewed in the light most favorable to Plaintiff, raise a genuine dispute of material fact concerning the reasonableness of Defendants' anti-harassment measures.

Even if Defendants could satisfy the first *Faragher-Ellerth* factor, Plaintiff argues that she did not unreasonably fail to take advantage of MEF's anti-harassment policy. Plaintiff alleges that she did not immediately report Mr. Roman's conduct because she needed time to figure out how to do so without Mr. Roman finding out. *Id.* at 570:17-583:24. Based on Mr. Roman's purported efforts to fire other employees who complained about him, Plaintiff claims that she was concerned that reporting Mr. Roman would lead to her termination as well. *Id.* at 583:21-583:24; Pl. Resp., Ex. A ¶ 19. Plaintiff allegedly lived in constant fear of retaliation based on Mr. Roman's threats concerning surveillance in the office. *See* Pl. Resp. 11.

An employee's failure to report harassment pursuant to company policy may not satisfy the second *Faragher-Ellerth* factor where her fear of retaliation is objectively reasonable. *Minarsky*, 895 F.3d at 316-17. Pernicious harassment coupled with a fear of worsening circumstances may constitute such reasonable fear. *Id.* Plaintiff has offered evidence suggesting that Mr. Roman frequently threatened female employees by telling them that he could hack their computers, view their communications, and that he had cameras throughout the office. Pl. Resp., Ex. C ¶ 22. Mr. Roman purportedly required that he be notified regarding all communications with Dr. Pipes. *Id.* ¶¶ 20-21. Additionally, Mr. Roman allegedly told other female employees that he would have them fired for being "a walking lawsuit." App. 1414:2-1415:20. According to Plaintiff, Mr. Roman would essentially ask female employees spy on one another, and have his sister eavesdrop on them as well. *Id.* at 573:19-574:2; Pl. Resp., Ex. A ¶ 17. Plaintiff has produced a litany of evidence suggesting that "sounding the alarm on her harasser would aggravate her work environment or result in her termination." *Minarsky*, 895 F.3d at 317. A reasonable jury could find that Plaintiff's

fear of retaliation was objectively reasonable, thereby defeating summary judgment as to the second prong of this analysis. Since Defendants have failed to establish the absence of a genuine factual dispute concerning either prong of their *Faragher-Ellerth* defense, their Motion must fail with regards to *respondeat superior* liability.

      **c.**      **Mitigation and Front-Pay Damages**

Title VII has been interpreted to impose a duty on claimants to mitigate damages purportedly resulting from an employer's discriminatory conduct. *Le v. University of Pennsylvania*, 321 F.3d 403, 407 n.2 (3d Cir. 2003) (citing 42 U.S.C. § 200e–5(g)(1)). To demonstrate an employee's failure to mitigate, the employer must show (1) that a "substantially equivalent" job opportunity was available to the employee, and (2) that the employee did not exercise "reasonable diligence" to obtain alternative employment. *Id.* Reasonable diligence should be measured against the individual characteristics of the employee and the job market. *Booker v. Taylor Milk Co. Inc.*, 64 F.3d 860, 865 (3d Cir. 1995). As a general matter, an employee exercises reasonable diligence by showing "a continuing commitment to be[ing] a member of the work force and by remaining ready, willing, and available to accept employment." *Ngai v. Urban Outfitters, Inc.*, No. 19-1480, 2021 WL 1175155, at * (E.D. Pa. Mar. 29, 2021) (quoting *Booker*, 64 F.3d at 864-65).

Plaintiff seeks, *inter alia*, ten years of front pay damages as part of her request for relief. Defs.' Mot. 19. Defendants argue that Plaintiff has failed to mitigate these damages by removing herself from the job market. Defs.' Mot. 19-20. According to Defendants, Plaintiff indicated her unwillingness to accept available employment opportunities during her deposition by failing to state that she was actively seeking a new job. *See id.* Plaintiff counters that she had secured a new position with a construction contractor prior to her departure from MEF, but the opportunity never manifested due to the economic conditions surrounding COVID-19. Pl. Resp. 14-15. Nevertheless, Plaintiff claims that she has continued to search for other jobs while attempting to build her own

real estate and consulting businesses. *Id.* Plaintiff also emphasizes that she received

unemployment benefits, which required a showing of mitigation on a weekly basis. *Id.* In light of

the forgoing, Plaintiff argues that she neither left the labor force nor failed to mitigate her damages.

*Id.*

As part of her transition from MEF, Plaintiff secured a position with a construction

contractor as a bookkeeper. App. 454:19-455:17. Following the outbreak of the COVID-19

pandemic, the contractor informed Plaintiff that they were no longer in a position to hire new

employees. *Id.* at 460:13-463:11. Since then, Plaintiff claims that she has focused on growing her

consulting business and has explored opportunities as a real estate agent. *Id.* at 463:12-463:24.[6]

Defendants have offered no argument or evidence concerning the availability of a "substantially

equivalent" job opportunity. Additionally, in the face of Plaintiff's evidence to the contrary,

Defendants have failed to demonstrate how Plaintiff's efforts to grow her businesses constitute an

unwillingness to remain part of the workforce or to accept new employment opportunities. Plaintiff

has therefore raised a genuine factual dispute concerning her mitigation of damages.

### d. Defendants' Abuse of Process Counterclaim

In response to the Complaints filed at the outset of this case, Defendants filed a

counterclaim for abuse of process against Plaintiff for allegedly filing false pleadings against Mr.

Roman in an attempt to harm his reputation and expose him to excessive attorney's fees. Defs.'

---

[6] Defendants refer the Court to case law from the Seventh Circuit in support of the proposition that "anti-discrimination laws are not a subsidy for fledgling enterprises." Defs.' Mot. 19 (citing *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 438-39 (7th Cir. 1992)). The Court is unpersuaded that this supports a finding that Plaintiff's self-employment is inadequate for mitigation purposes. Even if Plaintiff's businesses were "fledgling," Defendants' argument fails to consider the economic climate attendant to the COVID-19 pandemic and its impact on the consulting and real estate market. *See Booker*, 64 F.3d at 865. Furthermore, the portion of the opinion cited by Defendants references the Age Discrimination and Employment Act ("ADEA") of 1967, not Title VII. *See Great Am. Restaurants*, 969 F.2d at 439. Perhaps most significantly, the opinion explicitly declares that "[t]he notion that starting one's own business cannot constitute comparable employment for mitigation purposes not only lacks support…but has a distinctly un-American ring." *Id.* at 438. The Court agrees, and likewise declines Defendants' invitation to hold otherwise.

Resp. 5, 9.  Prior to leaving MEF, Plaintiff interviewed with the Kimmel Center for a potential job opportunity.  App. 474:12-479:24.  Following the interview, an individual called the Kimmel Center stating that Plaintiff was a drug addict and that she was suing her current employer.  *Id.* Believing that Mr. Roman made the phone call, Plaintiff included allegations of unlawful interference with her job prospects as part of her discrimination claims and her now withdrawn retaliation claim.  Defs.' Resp. 1.  Defendants contend that Plaintiff had no legitimate purpose for including these accusations in either Complaint, having known that her interview did not go well and that the Kimmel Center's decision was unrelated to the phone call they later received.  *Id.* at 5-6.  Upon learning that it was her boyfriend Matthew Ebert, not Mr. O'Brien, who made the phone call, Plaintiff consented to dismissal of her retaliation claim.  Pl. Mot. 2.  Defendants assert that Plaintiff's belated willingness to withdraw this claim is irrelevant since it has already caused Mr. Roman damage and because Plaintiff's remaining Complaint still includes false allegations of unlawful interference and retaliation.  Defs.' Resp. 7.

Plaintiff argues that "the mere filing of a legal action, without more, cannot constitute an abuse of process where subsequent overt acts are lacking."  Pl. Mot. 5 (citing *Giordano v. Claudio*, 714 F. Supp. 2d 508, 533-34 (E.D. Pa. 2010)).  Instead of relying on malicious intent, Plaintiff maintains that Defendants must demonstrate the commission of an act or threat not authorized by the process, instead of only objecting to a permissible act, such as the filing of a complaint.  *See id.* at 6.  Plaintiff asserts that her allegations stemmed from a good faith belief in the accuracy of the facts as pled and that her Complaint was expeditiously withdrawn upon learning that Mr. Roman had not made the phone call.  *Id.* at 7-8.  As a result, Plaintiff reasons, Mr. Roman has not sustained the requisite harm necessary to sustain an abuse of process claim.  *Id.* at 8.

Litigants may be liable for the common law tort of abuse of process when they institute a legal action to achieve "a purpose for which the process was not designed."  *Gen. Refractories Co.*

20

*v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). To establish an abuse of process claim, the moving party must show that a litigant brought suit "in a way that constituted a perversion of the [legal] process." *Bracey v. Huntingdon County*, 781 F. App'x 73, 76 (3d Cir. 2019) (quoting *Gen. Refractories*, 337 F.3d at 304). Such circumstances include "intentionally withholding critical documents, permitting false testimony…and misrepresenting facts to opposing counsel and the court." *In re Finney*, 184 F. App'x 285, 289 (3d Cir. 2006) (quoting *Gen. Refractories*, 337 F.3d at 301-05). The moving party must also show that the abusive conduct caused them harm. *Gen. Refractories*, 337 F.3d at 304. This generally occurs when a party's actions lack a legitimate legal justification and are primarily intended to increase the burden and expense of litigation for the other side. *Finney*, 184 F. App'x at 289.

Plaintiff's proposition that an abuse of process claim requires an overt act beyond the filing of a complaint is misplaced. The requirement of an unauthorized "act or threat" stems from the principle that a litigant's subjective bad faith or ulterior motive is facially insufficient to raise an abuse of process claim. *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa. Super. 1994). However, an abuse of process claim may lie where a litigant intends to cause financial injury to the opposing party. *See Downs v. Borough of Jenkintown*, No. 18-4529, 2019 WL 1383802, at *7 (E.D. Pa. Mar. 26, 2019). Where such intent is present, providing false testimony or misrepresenting facts to the court as part of a complaint may constitute a perversion of the legal process. *See Finney*, 184 F. App'x at 289.

Defendants claim that Plaintiff knew when she filed her Complaints that Mr. Roman had not "deliberately interfered with [her] ability to find employment elsewhere by identifying prospective employers" and making deliberately false statements about her. Defs.' Resp. 5-6. Plaintiff herself has acknowledged that, prior to filing her Complaints, she knew that her interview with the Kimmel Center had not gone well and that that their decision not to hire her was unrelated to the phone call

they received.  App. 481:24-484:11, 488:8-488:15.  Likewise, Plaintiff admits that she did not believe that Mr. Roman spoke negatively about her to any other prospective employers.  *Id.* at 734:1-734:4.  Plaintiff also does not deny that the Complaint in this matter still includes the claim that Mr. Roman interfered with her job prospects by making false statements about her to prospective employers.  Compl. ¶ 55.  Finally, Plaintiff has offered no argument concerning the legal fees Mr. Roman has incurred in defending against these allegations.  Defendant has therefore offered uncontroverted factual evidence which could permit a reasonable jury to find that Plaintiff's actions amounted to a perversion of the legal process which caused Mr. Roman harm.

      **e.**      **Defendants' Motion to Strike**

      Plaintiff submitted three affidavits in support of her Response in Opposition to Defendants' Motion for Summary Judgment.  These affidavits include various allegations against Mr. Roman by Plaintiff, former MEF Development Associate Caitriona Brady, and former MEF Program Manager Patricia McNulty, respectively.  Each affidavit provides specific details concerning Mr. Roman's alleged day-to-day harassing and discriminatory behavior, his purported efforts to exert control over and intimidate female employees at MEF, and his apparent attempts to pit Plaintiff's coworkers against her.  *See generally*, Pl. Resp., Ex. A-C.  Defendants move to strike a total of sixty-six paragraphs between the three affidavits on the grounds that the statements therein lack the requisite personal knowledge necessary for consideration by the Court.  Defs.' Mot. to Strike 3-4.  Additionally, Defendants' Motion seeks exclusion of twenty-two paragraphs pursuant to the "sham-affidavit" doctrine.  *Id.* at 4-10.

      An affidavit offered in opposition to a motion for summary judgment must be based on the declarant's personal knowledge.  Fed. R. Civ. P. 56(c)(4).  They must also attest to facts, rather than mere opinions or conclusions.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).  Pursuant to the "sham-affidavit" doctrine, a district court may disregard an affidavit at the summary

judgment stage when it "contradicts earlier deposition testimony without [a] satisfactory or plausible explanation." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017). Courts applying this standard adhere to a flexible approach, "giving due regard to the surrounding circumstances." *Id.* Mere discrepancies between deposition testimony and the deponent's subsequent affidavit does not amount to a "sham affidavit." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). Subsequent clarifying statements may likewise be sufficient to create a genuine factual dispute. *Daubert*, 861 F.3d at 392. Conversely, the court has discretion to exclude statements "entirely unsupported by the record and directly contrary to [other relevant] testimony." *Id.* (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007)).

Defendants urge the Court to strike paragraphs 7, 9, 12-18, 20-27, and 32-33 of Plaintiff's affidavit, paragraphs 6-7, 10, and 12-26 of Ms. Brady's affidavit, and paragraphs 5-6, 11-26, and 28-40 of Ms. McNulty's affidavit, arguing that they "include subjective beliefs and opinions, and any purported factual assertions…are not supported by [their] personal knowledge." Defs.' Mot. to Strike 3-4 (quoting Fed. R. Civ. P. 56(c)(4)). "Personal knowledge" refers to "[k]nowledge of facts gained through firsthand observation or experience, as distinguished from belief based on what someone else said." *Personal Knowledge*, Black's Law Dictionary (10th ed. 2014). The paragraphs at issue contain allegations regarding the contemporaneous experiences, emotions, thoughts, and personal observations of each affiant during their tenure at MEF.[7] The Court is

---

[7] For example, paragraph 7 of Plaintiff's affidavit states that Mr. Roman would "stare at our legs, our breasts, and our buttocks. On one instance, Roman came into my office and stared at my gym bag…when he left I noticed that my undergarments were showing." Pl. Resp., Ex. A ¶ 7. Paragraph 17 describes how Mr. Roman "had surveillance cameras set up all over the office…[h]e used to allude to additional cameras which made us all paranoid he was watching our every move." *Id.* ¶ 17. Ms. Brady's affidavit states that Mr. Roman's behavior towards women in the office included "leering, acting physically inappropriate by standing over me or brushing against me, making inappropriate comments about my father's sex life, and other ongoing inappropriate behaviors." *Id.*, Ex. B ¶ 6. Similarly, Ms. McNutly alleges that Mr. Roman would make inappropriate comments about her sex life, ask her what kind of men she was attracted to, and whether she would date a Jewish man. *Id.*, Ex. C ¶ 6. Ms. McNulty also claims that Mr. Roman would ask Plaintiff "inappropriate questions about her dating and sex life, discussing her sex life outside of her presence, making remarks about her allegedly sleeping with Caitriona Brady's father in order to get a job, leering at her legs, [and] making comments about older women." *Id.* ¶ 11.

unable to discern how an individual lacks personal knowledge concerning events witnessed through their own eyes, words heard by their own ears, and feelings perceived within their own hearts and minds.[8] Defendants' formulaic and generalized recitation of Rule 56 is not in itself a sufficient basis for concluding that the affiant's statements lack foundation.[9] Defs.' Mot. to Strike 3-4.

Defendants also move to strike paragraphs 6-10, 12-16, 20-22, and 31-34 of Plaintiff's affidavit, paragraphs 5, 25, and 26 of Ms. Brady's affidavit, and paragraphs 5, 11-13, and 15 of Ms. McNutly's affidavit pursuant to the "sham-affidavit" doctrine. *Id.* at 4-10. With regards to Plaintiff's affidavit, Defendants argue that paragraphs 6-10, 12-16, and 31 should be stricken due to Plaintiff's statement in paragraph 6 that "[t]hroughout the course of my employment with [MEF] I was subjected to sexual harassment by the Director, Gregg Roman." Defs.' Mot. to Strike 5. Defendants assert that this contradicts her earlier deposition testimony that Mr. Roman did not directly sexually harass her during the final year of her employment with MEF. *Id.* at 4-5. Therefore, Defendants conclude, these paragraphs must be excluded as part of a sham affidavit because the alleged harassment and intimidation by Roman did not occur throughout the *entire* course of her employment. *Id.*

Defendants likewise seek exclusion of paragraphs 20-22 and 32-34 as inconsistent with Plaintiff's deposition testimony. *Id.* at 6-8. They reason that the Court should strike paragraphs 20-22, wherein Plaintiff cites the termination of certain female employees as the basis for her fear of retaliation, because Plaintiff previously testified to having negative views of these employees. *Id.*

---

[8] Applying Defendants' own logic, Mr. Roman would also lack personal knowledge concerning his own interactions with employees at MEF.

[9] Indeed, Defendants' Motion repeats the following argument in reference to each respective affidavit three consecutive times: "Each of these paragraphs include subjective beliefs and opinions, and any purported factual assertions in the paragraphs are not supported by [affiant's] personal knowledge. The paragraphs are, simply put, nothing more than [affiant's] subjective belief and do not comport with the requirement of Fed. R. Civ. P. 56(c)(4) which requires an affidavit to set forth specific facts of which the affiant has personal knowledge. Fed. R. Civ. P. 56(c)(4); *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 282 (3d Cir. 1988); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). Accordingly, these paragraphs should be stricken."

at 7.  Additionally, Defendants argue that Plaintiff's statements in paragraphs 32 and 33 concerning

Mr. Roman's conduct after November 5, 2018 should be stricken in light of Plaintiff's testimony

that Mr. Roman was only in the office sporadically after that time.  *Id.* at 6.  Finally, Defendants

assert that Plaintiff's statement in paragraph 34, that she "continued to seek employment," should

be excluded because Plaintiff previously testified that she was focusing on growing her consulting

and real estate businesses.  *Id.* at 7-8.  Defendants' attempt to seize on subtle and immaterial

distinctions in Plaintiff's statements have little substantive bearing on whether Plaintiff's affidavit

contradicts her prior deposition testimony.  These statements constitute neither a reformulation of

Plaintiff's general theory of defense nor are they at odds with the specific allegations offered during

her deposition.  *See Baer*, 392 F.3d at 625 (citation omitted).  At best, Defendants' arguments go to

credibility and invite the Court to impermissibly usurp the jury's role by weighing the merits of the

Parties' respective positions.

In reference to Ms. Brady's affidavit, Defendants contend that the Court should strike

paragraph 5, wherein Ms. Brady claims to have observed Mr. Roman sexually harass Plaintiff.  Pl.

Resp., Ex. B ¶ 5.  According to Defendants, Ms. Brady previously testified that she never

personally observed Mr. Roman sexually harass any MEF employees.  Defs.' Mot to Strike 8-9.

Defendants also claim that Ms. Brady's statements in paragraphs 25 and 26 concerning Mr.

Roman's purported attempts to undermine Plaintiff's authority contradict her deposition testimony

stating that Mr. Roman's behavioral problems ceased after November 5, 2018.  *Id.* at 9.  While Ms.

Brady's alleged testimony could serve to undermine the statements in her affidavit, the deposition

to which Defendants refer is not part of the record in this case.[10]  The Court therefore lacks a factual

basis for finding that Ms. Brady's prior testimony contradicts her affidavit.

---

[10] Defendants assert that Ms. Brady provided this testimony during a separate lawsuit.  Defs.' Mot. to Strike 8.  The Appendix does not contain a copy of this deposition, and Defendants' Motion only cites to select portions of statements apparently made by Ms. Brady.

With regards to Ms. McNulty's affidavit, Defendants move to strike her statements concerning Mr. Roman's alleged harassment in paragraphs 5, 11-13, and 15 because "she only testified that Roman would 'get really close to' Plaintiff." *Id.* at 10. Defendants also argue that Ms. McNutly's slightly differing accounts of harassment by Mr. Roman in a movie theater and his alleged statements about Plaintiff "grabbing for power" should be stricken because these accounts are inconsistent and merely an attempt to manufacture a material factual dispute. *See id.* at 10-11. In considering affidavits offered in opposition to a summary judgment motion, the question before the Court is whether the affiant's statements raise a triable issue of fact, not whether they used the same precise wording in their deposition. *See Mercado*, 2019 WL 3318355, at *6. Minor variations between an affidavit and deposition testimony do not render the affiant's statements "entirely unsupported by the record" and devoid of a satisfactory explanation for subsequent contradictions. *Jiminez*, 503 F.3d at 253-54. Defendants' Motion raises no tenable grounds for striking the affidavits attached to Plaintiff's Response, and must therefore be denied.

## V.  CONCLUSION

Neither Party has sustained their burden of demonstrating the absence of a genuine factual dispute regarding the challenged claims within their respective motions. Defendants' argument contesting the timeliness of Plaintiff's PHRA claim must fail because a jury could reasonably find that her allegations involve "similar conduct by the same individuals, suggesting a persistent, ongoing pattern" of discrimination. Plaintiff's Title VII claim must likewise survive because Plaintiff has offered evidence suggesting a genuine dispute concerning severe and pervasive discrimination, as well as *respondeat superior* liability. Additionally, the Court denies Defendants' Motion as it pertains to Plaintiff's front-pay claim since Plaintiff has offered evidence sufficient for a factfinder to conclude that she has mitigated her damages.

Plaintiff's Motion for Summary Judgment is also denied.  Defendant has offered uncontroverted factual evidence which could permit a reasonable jury to find that Plaintiff's retaliation claim amounted to a perversion of the legal process which caused Mr. Roman harm.  Finally, Defendants' Motion to Strike is denied because the disputed statements within the affidavits offered by Plaintiff were based on the affiant's personal knowledge and they did not contradict prior deposition testimony.  Accordingly, Defendants' Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment, and Defendants' Motion to Strike are denied.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge