**DEREK SMITH LAW GROUP, PLLC**
ERICA A. SHIKUNOV, ESQUIRE
Attorney ID No. 316841
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
erica@dereksmithlaw.com
*Attorneys for Plaintiff, Marnie O'Brien*

## IN THE UNITED STATES DISTRICT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARNIE O'BRIEN** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil Action** |
| **vs.** | : | |
| | : | **No. 2:19-cv-06078-JMG** |
| **MIDDLE EASTERN FORUM,** | : | |
| **DANIEL PIPES (individually),** | : | |
| **and** | : | |
| **GREG ROMAN (individually)** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

---

**PLAINTIFF'S PRE-TRIAL MEMORANDUM**

---

Erica A. Shikunov, an attorney duly admitted to practice law before the District Court of the Eastern District of Pennsylvania hereby sets forth the following Pre-Trial Memorandum.

I am an attorney with the Derek Smith Law Group PLLC, attorneys of record for the Plaintiff herein. As such, I am fully familiar with the facts and circumstances of this matter based on a review of the documentation contained in the file maintained by this office, which I believe to be true.

<u>**PRE-TRIAL MEMORANDUM**</u>

Plaintiff Marnie O'Brien, by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, respectfully submit this Pre-Trial Memorandum.

## I.   NATURE AND BASIS OF ACTION

This action is brought against all defendants as a Title VII sexual harassment claim as well as a sexual harassment claim under the Pennsylvania Human Relations Commission. Counter-Claim Plaintiff Gregg Roman has brought a common law counter claim for Abuse of Process against Marnie O'Brien.

## II.  STATEMENT OF FACTS

While working for the Middle East Form, Marnie O'Brien was subjected to severe and pervasive sexual harassment at the hands of Defendant Gregg Roman. While working for Defendants Ms. O'Brien was sexually harassed herself through inappropriate sexual commentary and discussion, leering, forced social interactions and observing her colleagues also being sexually harassed. Plaintiff will show that Roman, knowing his behaviors were inappropriate, pitted the other female employees against Ms. O'Brien, deliberately fostering a hostile work environment, and also threatened severe repercussions if his conduct were ever reported. Further, Roman deliberately fostered an environment of fear and paranoia with threats of camera surveillance and easy access to employees' personal devices. Plaintiff ultimately reported this conduct to Defendant Pipes in a handwritten note, which demonstrates her fear of reprisal from Roman. At all relevant times Roman was a proxy for the Middle East Forum and Defendants are not entitled to a Farragher-Ellerth defense.

Upon Plaintiff reporting the behaviors, Pipes held terse interviews with the involved women which were completed in less than a day. He held an emergency staff meeting on a

Saturday. All employees were required to sign non-disclosure agreements before attending the meetings and Roman's sister was present at the meeting. Following the meeting, Roman maintained his rate of pay and title. He was relegated to work from home and some of his responsibilities were redistributed. Within three months, his permissions and responsibilities started to be given back to him, and Ms. O'Brien was required to work with him on an audit, over her protest. Within six weeks of Roman resuming responsibilities, a new rumor was circulated about Plaintiff's sex life. Pipes declined to address the second rumor. Ultimately, Ms. O'Brien could no longer withstand the pressure of the work environment and was forced to seek employment elsewhere. That employment ultimately fell through due to the pandemic, but Ms. O'Brien continued to seek employment elsewhere while also building her own business to attempt to mitigate her losses.

As to the counter-claim for abuse of process, Plaintiff intends to seek a Directed Verdict of dismissal as Roman cannot meet his burden of proving malintent. Plaintiff will demonstrate that after interviewing at the Kimmel Center she was informed she did not get the job and that anonymous male caller had contacted her potential employer and reported that she sued all of her previous employers for sexual harassment and that she was a drug user. Plaintiff did not get the job and was not called to work with the recruiter again. Plaintiff filed a second lawsuit for retaliation. Months later, her boyfriend admitted to making the calls in a filing with the Court. Plaintiff agreed to dismiss the second complaint the next day, but Defendants refused to stipulate to its dismissal. Plaintiff, through counsel, informed the Court of her consent to dismiss the Complaint and it was ultimately dismissed. No discovery was taken, no disclosures prepared and no pre-trial conference was held with regard to the second Complaint. Roman filed an Answer

with Counter-claims, Plaintiff's boyfriend admitted to making the calls in a Motion to Dismiss, and Plaintiff agreed to withdraw the second Complaint.

Of note, Roman filed a slew of counter-claims, none of which were supported by the record. On the eve of Summary Judgment motions coming due, Roman agreed to dismiss the rest of the Counter-claims after they had been fully litigated, with the exception of the Abuse of Process claim. In so doing, Plaintiff will demonstrate that Roman engaged in the exact same behaviors of which he accuses Plaintiff.

### III. LIST OF DAMAGES

#### 1. <u>Compensatory Damages</u>

At the time of her constructive discharge Plaintiff was making $85,000.00 per year. Following her discharge, the job she had procured fell through. Plaintiff has continued to seek employment and worked on building her consulting business, making $32,000.00 following the constructive discharge. Pro-rated for the few months of 2020 Ms. O'Brien continued to work for Middle East Forum, her lost wages are $43,000.00. For 2021, through the date of trial, Ms. O'Brien will have lost an additional $28,538.46, bringing her total back pay to $71,538.46. Ms. O'Brien suffers losses of approximately $53,000.00 per year, despite appropriate mitigation efforts. Ms. O'Brien seeks ten years of front pay damages at that rate, or $530,000.00. This brings Ms. O'Brien's total compensatory damages to $601,538.46.

#### 2. <u>Emotional Damages</u>

Plaintiff has suffered severe emotional damages as a result of the sexual harassment she endured with the Middle East Forum, but has not been able to afford any type of ongoing treatment due to her separation. Further, Plaintiff's expert witness has detailed in her report that the discrimination and harassment that Plaintiff endured throughout her employment with

Defendants has been a significant contributing factor in her medical diagnosis.  As a result, Plaintiff is seeking **$3,000,000** in emotional damages at trial. Plaintiff would note that while she is aware that her Title VII claims cap her damages, her continuing violations claims under the Pennsylvania Human Relations Act do not cap her Emotional damages.

### 3.  **Punitive Damages**

Plaintiff seeks an award of nine times the award of compensatory damages pursuant to BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996).

### 4.  **Attorneys' Fees**

Plaintiff is seeking attorneys' fees at the time of trial.  At the time of trial, attorneys' fees could be more than **$750,000** given the length of litigation and the amount of time put in by Counsel.  Plaintiff reserves the right to amend this fee as the litigation progresses.

## IV. WITNESS LIST

Plaintiff intends upon calling the following witnesses, all of whom were disclosed to Counsel well before the submission of this memorandum. Plaintiff reserves the right to call any witness listed on Defendants' witness list and to not call anyone on her own witness list. The following witnesses are not necessarily listed in the order in which they will be called to testify.:

1. **Marnie O'Brien** (Plaintiff), may be contacted through counsel.

2. **Matthew Ebert** (Plaintiff's boyfriend and previous defendant), contact information previously provided to Opposing Counsel.

3. **Caitriona Brady** (Plaintiff's colleague and eyewitness to sexual harassment), may be contacted through her counsel, Seth Carson of Derek Smith Law Group PLLC.

**4.** __Lisa Barbounis__ (Plaintiff's colleague and eyewitness to sexual harassment), may be contacted through her counsel, Seth Carson of Derek Smith Law Group PLLC.

**5.** __Patricia McNulty__ (Plaintiff's colleague and eyewitness to sexual harassment), may be contacted through her counsel, Seth Carson of Derek Smith Law Group PLLC.

**6.** __Dr. Kendra Kubala__, (Plaintiff's expert witness), may be contacted through counsel.

**7.** __Gregg Roman__, (Defendant).

**8.** __Daniel Pipes__, (Defendant).

## V. STIPULATIONS OF COUNSEL

Plaintiff hereby attaches a list of Stipulations to this Pre-Trial Memorandum as Exhibit A. Counsel for the Parties continue to work together to arrive at additional Stipulations and should such efforts become successful the Parties intend to amend Exhibit A accordingly to reflect additional Stipulations.

## VI. EXHIBITS TO BE PRESENTED AT TRIAL

Plaintiff hereby provides a schedule of all exhibits expected to be offered at trial annexed hereto as "Exhibit B." Plaintiff reserves the right to use additional records and exhibits as impeachment evidence during cross examination.

## VII.    STATEMENTS OF OBJECTION

**1.** __Admissibility of Exhibits Based on Authenticity__

The Parties do hereby stipulate to the Authenticity of each other's Exhibits.

2. **Admissibility of Any Evidence Expected to be Offered for any Reason (except Relevancy)**

Plaintiff maintains relevancy objections but based upon the Court's Rules and Procedures saves those objections to be argued at a later time. Without waiving said objections Plaintiff presents the following objections to the presented exhibits.

    a.  DX 115

        i.  Plaintiff objects under Rule 408. This exhibit contains statements between two non-party witnesses discussing damages in their respective cases and is substantially more prejudicial than probative. The conversation does not involve Plaintiff.

        ii.  Plaintiff further objects as this exhibit was produced after discovery closed and was not made available prior to the witnesses' respective depositions. Given the late production the exhibit should not be permitted.

        iii.  Plaintiff objects under 802 and 805 as this exhibit contains hearsay and hearsay within hearsay statements offered for the truth of the matter, which cannot be cured.

        iv.  Finally, Plaintiff objects under Rule 608(b) as Defendants are attempting to use a specific instance of conduct to form the Jury's opinion about the witness.

        v.  Plaintiff reserves Article IV objections to this exhibit.

    b.  DX 116

        i.  Plaintiff objects under Rule 408. This exhibit contains statements between two non-party witnesses discussing their views about working for a Jewish

organization and general work place complaints and is substantially more prejudicial than probative. The conversation does not involve Plaintiff.

ii.   Plaintiff further objects as this exhibit was produced after discovery closed and was not made available prior to the witnesses' respective depositions. Given the late production the exhibit should not be permitted.

iii.   Plaintiff objects under 802 and 805 as this exhibit contains hearsay and hearsay within hearsay statements offered for the truth of the matter, which cannot be cured.

iv.   Plaintiff objects under Rule 608(b) as Defendants are attempting to use a specific instance of conduct to form the Jury's opinion about the witness, specifically, statements about working for a Jewish organization.

v.   Plaintiff objects as the messages are incomplete and appear to have been cut off.

vi.   Plaintiff reserves Article IV objections to this exhibit.

c.   DX 118

i.   Plaintiff objects and will file a formal Motion in Limine regarding this exhibit.

ii.   Plaintiff objects under Rule 408 as this is a recording of an argument between Plaintiff and another witness which has nothing to do with the case. The contents of the argument is substantially more prejudicial than probative.

iii.   The recording was taken in Philadelphia, PA illegally and without Plaintiff's consent and is inadmissible.

iv.   Plaintiff objects under Rule 608(b) as Defendants are attempting to use a specific instance of conduct to form the Jury's opinion about the witness, specifically, the argument itself.

v.   Plaintiff objects under 802 and 805 as this exhibit contains hearsay and hearsay within hearsay statements offered for the truth of the matter, which cannot be cured.

vi.   Plaintiff reserves Article IV objections to this exhibit.

d.  DX 119

i.   Plaintiff will file a Motion in Limine regarding this exhibit.

ii.   Plaintiff objects under Rule 408 as this recording contains statements about unidentified and unnamed witnesses and contains various statements about those unnamed witnesses sex lives, drug use and alleged decision making regarding entering litigation. Plaintiff, nor any specific witness is named in the recording. The probative value is substantially outweighed by its prejudice to Plaintiff.

iii.   The recording was taken after the caller stated twice that the recipient of the call did not have his permission to record the call.

iv.   Plaintiff objects under Rule 608(b) as Defendants are attempting to use a specific instance of conduct to form the Jury's opinion about several witnesses, specifically, the victims of Defendant Roman's sexual harassment, despite the fact that none of them are named in the recording.

     v.    Plaintiff objects under 802 and 805 as this exhibit contains hearsay and hearsay within hearsay statements offered for the truth of the matter, which cannot be cured.

     vi.    Plaintiff reserves Article IV objections to this exhibit.

e.  Plaintiff objects to any and all exhibits that were produced after the close of discovery.

### 3. The Adequacy of the Qualifications of an Expert Witness Expected to Testify

Plaintiff does not object to the qualifications of Dr. Reed insofar as to preclude him from testifying. However, Plaintiff does not stipulate to his qualifications and observes the right to question is qualifications upon voir dire prior to his testimony. Plaintiff further reserves the right to inquire about Dr. Reed's practice and qualifications as it goes to his credibility during the time of trial.

### 4. The Admissibility of any Opinion Testimony from Lay Witnesses Pursuant to Federal Rule of Evidence 701

a.  Plaintiff objects to any Defendant mentioning, referencing, or opining regarding the mental state, thoughts, motivations, emotions, or mental health status or mental or physical medical diagnosis of Plaintiff or any other witness. This is especially relevant to the counter-claim. During his deposition testimony Defendant Roman repeatedly opined as to the mental state/status of several witnesses, mental health or addiction diagnoses of several witnesses and as to what the internal thought processes of several witnesses must have been. None of the Defendants in this matter maintain a medical or psychological degree and such testimony should be prohibited.

b.  Plaintiff objects to Defendant Roman offering any opinion testimony as to journalistic standards as he maintains no journalism degree.

## VIII.  DEPOSITION TESTIMONY INTENDED TO BE OFFERED DURING CASE IN CHIEF

Plaintiff does not intend upon offering any deposition testimony during her case in chief. Plaintiff reserves the right to use deposition transcripts or video to impeach any witness. Further, Plaintiff would note that as mentioned above, Counsel for the parties are endeavoring to reach additional Stipulations, which may include the reading or playing of deposition testimony with designations from the transcript being made by both parties in lieu of inconveniencing certain witnesses and to streamline the time needed at trial.

## IX. STATEMENT OF IMPORTANT LEGAL ISSUES UPON WHICH THE COURT WILL NEED TO RULE BEFORE TRIAL

a.  Defendants are Precluded from Presenting a Farragher-Ellerth Defense as Gregg Roman is a Proxy for the Middle East Forum

To prevail in her Title VII hostile work environment suit, Plaintiff, Marnie O'Brien must establish the prima facie elements promulgated by the Third Circuit: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; (5) the existence of respondeat superior liability. See Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 276–77 (3d Cir.2001). (quoting Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir.1990)).  See also (Third Circuit Jury Instructions - 5.1.4 Harassment — Hostile Work Environment).

In cases in which the harasser is a "supervisor," and the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998).  If no tangible employment action is taken, ***some employers*** may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 807 (1998); <u>Ellerth</u>, supra, at 765.  However, there is a situation in which an employer may not use the affirmative defense, even if it establishes both prongs of the test and the victim does not suffer a tangible employment action. This occurs when the harassing employee is a proxy of the employer.  The Supreme Court acknowledged this fact in both <u>Faragher</u> and <u>Ellerth</u> by referring to proxy liability in different contexts.

In <u>Boca Roton v. Farragher</u>, the Court held, "Nor was it exceptional that standards for binding the employer were not in issue in <u>Harris v. Forklift Systems, Inc</u>.  In that case of discrimination by hostile environment, the individual charged with creating the abusive atmosphere was the president of the corporate employer . . . who was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy."  In <u>Burlington Industries Inc. v. Ellerth</u>, the Court held, "[s]ubsection (a) addresses direct liability, where the employer acts with tortious intent, and indirect liability, where the agent's high rank in the company makes him or her the employer's alter ego."  The Court went on to note that the parties did not dispute that the harasser's high rank imputes liability under this principle. <u>Id</u>.  In addressing the Supreme Court's holdings in <u>Farragher</u> and <u>Ellerth</u>, the Second Circuit Court of Appeals in <u>Townsend v. Benjamin Enterprises, Inc.</u>, held that "[e]very Court of Appeals to have

considered this issue has held that the Faragher/Ellerth affirmative defense is unavailable when the supervisor in question is the employer's proxy or alter ego." <u>Townsend v. Benjamin Enters., Inc.</u>, 679 F.3d 41, 52 (2d Cir. 2012). Many other courts have come to the same conclusion. E.g., <u>Ackel v. Nat'l Commc'ns, Inc.</u>, 339 F.3d 376, 383 (5th Cir. 2003) ("[T]he employer is vicariously liable for its employees activities in two types of situations: (1) there is a tangible employment action or (2) the harassing employee is a proxy for the employer."); <u>Johnson v. West</u>, 218 F.3d 725, 730 (7th Cir. 2000) ("Vicarious liability automatically applies when the harassing supervisor is . . . 'indisputably within that class of an employer organization's officials who may be treated as the organization's proxy . . . .'" (quoting <u>Faragher</u>, 524 U.S. at 789)); <u>Durham Life Ins. Co. v. Evans</u>, 166 F.3d 139, 152 n.8 (3d Cir. 1999); <u>cf</u>. <u>Passantino v. Johnson & Johnson Consumer Prods., Inc.</u>, 212 F.3d 493, 517 (9th Cir. 2000) ("Thus, the [affirmative] defense remains inapplicable as a defense to punitive damages when the corporate officers who engage in illegal conduct are sufficiently senior to be considered proxies for the company.").

Due to Defendant, Gregg Roman's position as Corporate Officer, member of the Executive Committee, and Director of The Middle East Forum ("MEF"), Defendants should not be permitted to present the <u>Farragher-Ellerth</u> affirmative defense at trial.

The proxy exception to the Faragher-Ellerth affirmative defense is required when the harassing  supervisor holds a sufficiently high position in the management hierarchy of the company for his actions to be imputed automatically to the employer. <u>Faragher</u>, supra at 790, <u>citing</u> <u>Torres v. Pisano</u>, 116 F.3d 625 (2nd Cir., 1997).  In cases where the harasser is the company owner, president, proprietor, partner ***or corporate officer***, an employee need not prove respondeat superior liability, or the propriety of holding an employer liable. <u>Faragher</u>, supra

at 789-90.  The <u>Ellerth</u> Court referred to this as the alter-ego theory of liability, wherein the agent's high rank within the company makes him the employer's alter ego. <u>Ellerth</u>, supra, at 758.

At all times relevant to this case, Defendant Roman was the Director of the Middle East Forum, the Chief Operating Officer of the Middle East Forum, and the Corporate Secretary, and a Member of the Board of Directors for the Middle East Forum.  Each one of these executive level, leadership positions is independently sufficient to satisfy the proxy liability standard; however, this standard should also be applied because Gregg Roman was an integral and irreplaceable policy maker within the Middle East Forum Organization.  See <u>Middle East Forum</u> <u>Website – list of corporate officers attached as Exhibit "C".</u>

The Middle East Forum is a non-profit organization that is managed and maintained by individuals who hold various roles and titles.  Defendant, Daniel Pipes, is the President, a member of the Board, a member of the Executive Committee, and Corporate Officer.  Defendant, Gregg Roman is the Director, a member of the Board, a member of the Executive Committee, and a Corporate Officer.  Importantly, Defendant, Gregg Roman, as the Director of Middle East Forum, the Corporate Secretary, and member of the Executive Committee attends all high-level meetings where policy decisions are decided.

As Director of MEF, Gregg Roman holds the number-two ranking position within the Organization, second only to President, Daniel Pipes.  But Daniel Pipes employs a hands-off approach and relies heavily upon Defendant, Gregg Roman to develop, implement, monitor, and maintain MEF policies, procedures and protocols.   Even after several women reported severe and pervasive discrimination and harassment in the workplace in November 2018, Defendant, Gregg Roman's executive level position within the organization never changed.  Defendant, Gregg Roman remained the Corporate Secretary and member of the Executive Committee. <u>See</u>

<u>Daniel Pipes' Email regarding new, interim terms for your employment at the Middle East Forum Exhibit "D"</u>; <u>See</u> <u>also</u> <u>Deposition of Daniel Pipes</u>.  Defendant, Daniel Pipes explained the reason why Defendant, Greg Roman remained a high-level leader and decision maker within the organization in a text communication to Matthew Benett sent in January 2019.

| Bennett: | 20:53 If l did what gregg did, would I still be employed? |
|---|---|
| DP: | 20:55 There are two main reasons he is still employed. 1. The outside world does not appreciate drama. 2. He has skills that we need now. Were he suddenly gone, we'd be in trouble. |

<u>Text communication between Daniel Pipes and Matthew Bennet attached and marked Plaintiff's Exhibit "E"</u>.

Defendant, Gregg Roman is held out publicly both in media appearances and to donors as a face of the Middle East Forum.  Each one of his executive level, leadership positions independently supports the Alter-Ego theory of liability.  Taken together there can be no reasonable dispute that Defendants should be held strictly liable for the actions of Defendant, Gregg Roman's s unlawful sexually harassing conduct and comments.  Simply put, this means that Defendants should not be permitted to present the affirmative defenses promulgated in <u>Faragher v. Boca Raton</u> and <u>Burlington Industries, Inc. v. Ellerth</u>.  Defendant Roman's repeated targeting of MEF's female employees is thus imputed to the organization.

A ruling from the Court on this particular issue changes the jury instructions immensely, as well as what evidence is permissible and as such the parties require a ruling from the Court on this issue.

## X.  TIME NEEDED FOR TRIAL

Ms. O'Brien anticipates that trial will take four to five days, inclusive of all witnesses. At its lengthiest, Plaintiff does not foresee trial proceeding through August 6, 2021 and even that seems unlikely.


DATED:  July 19, 2021

DEREK SMITH LAW GROUP, PLLC


_/s/ Erica A. Shikunov_____
Erica A. Shikunov, Esq.
*Attorneys for Plaintiff*
1835 Market Street, Ste. 2950
Philadelphia, PA 19103
(215) 391-4790


TO:     Defendants' counsel
        Molly M. DiBianca, Esq.
        *Attorney for Defendants*
        824 N. Market Street, Ste. 710
        Wilmington, DE 19806

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARNIE O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MIDDLE EAST FORUM, | ) |
| DANIEL PIPES (individually), and | ) |
| GREGG ROMAN (individually), | )   C.A. No.  19-06078 JMG |
| | ) |
| Defendants. | ) |
| | ) |
| GREGG ROMAN, | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARNIE O'BRIEN, | ) |
| | ) |
| Counterclaim Defendant, | ) |

**EXCLUSIONARY STIPULATIONS**

The parties have stipulated and agreed that the following evidence shall be excluded at trial:

1. Any reference to or mention of Daniel Pipes' personal life, marriage, divorce, or personal romantic relationships

2. Any reference to or mention of settlement discussions in this or any other case.

3. Any reference to or mention of Plaintiff's sexually transmitted disease.

4. Any reference to or mention of the EEOC determination, dismissal or notice of rights.

5. Any reference to or mention of MEF's insurance.

*[Remainder of page left blank intentionally.]*

CLARK HILL PLC                                         DEREK SMITH LAW GROUP, PLLC

*/s/ Jakob Williams, Esq.*                             */s/ Erica A. Shikunov, Esq.*
Jakob Williams, Esq. (PA Bar No. 329359)              Erica A. Shikunov, Esq. (PA No. 316841)
Two Commerce Square                                    1835 Market Street, Suite 2950
2001 Market Street, Ste. 2620                          Philadelphia, PA 19103
Philadelphia, PA 19103                                 P:  (215) 391-4790
P: (215) 640-8500                                      erica@dereksmithlaw.com
Jfwilliams@clarkhill.com

                                                       *Attorneys for Plaintiff*
*~of counsel~*
                                                       Dated:    July 9, 2021
Margaret M. DiBianca, Esq. (DE No. 4539)
CLARK HILL PLC
824 N. Market Street, Ste. 710
*Admitted Pro Hac Vice*
Wilmington, DE  19801
P:  (302) 250-4748
mdibianca@clarkhill.com

*Attorneys for Defendant*

Dated:    July 9, 2021

# EXHIBIT B

| PX | Date | Description | Bates_beg | Bates-end |
|----|------|-------------|-----------|-----------|
| 1 | N/A | Telegram - "Moment of Catharsis" | D6010 | D6010 |
| 2 | 6/4/2019 | Pipes' Email - "This tension is the bane of my life" | D38 | D40 |
| 3 | 5/7/2019 | Roman's Email - "I'm ready to work with her" | D4832 | D4832 |
| 4 | 6/1/2019-6/5/2019 | Emails re: Audit | D38 | D44 |
| 5 | 6/5/2019 | Emails re: Audit | D1318 | D1318 |
| 6 | 11/3/2018 | Memo re:  NDA | D1331 | D1331 |
| 7 | 4/28/2019 | Email re add'tl harassment by Roman | D1322 | D1322 |
| 8 | N/A | Draft Memo Re: Gregg in Office | D968 | D969 |
| 9 | 4/23/2019 | McNulty email to Pipes | D972 | D972 |
| 10 | 11/1/2018 | Plaintiff's handwritten notes | O'Brien561 | O'Brien565 |
| 11 | 10/12/2018 | Telegrams between Pipes and Bennet | D6002 | D6096 |
| 12 | N/A | Telegrams between Pipes and Plainitff | D3665 | D3694 |
| 13 | 11/15/2018 | Plaintiff to Pipes Emails/Telegrams: Insurance w/o Authorization | D2406 | D2408 |
| 14 | 11/15/2018 | Plaintiff to Pipes Emails/Telegrams: Insurance w/o Authorization | D3320 | D3322 |
| 15 | 11/15/2018 | Plaintiff to Pipes Emails/Telegrams: Insurance w/o Authorization | D3301 | D3302 |
| 16 | 11/15/2018 | Plaintiff to Pipes Emails/Telegrams: Insurance w/o Authorization | D3670 | D3671 |
| 17 | 10/30/2018 | Bennett's response to 10/30 | D3919 | D3920 |
| 18 | 11/4/2018 | Email Barbounis to Pipes re: Allegations and Consequences | D977 | D979 |
| 19 | 11/5/2018 | Barbounis email to Pipes re Allegations and Consequences | D1113 | D1114 |
| 20 | 11/4/2018 | Plaintiff email to Pipes: Allegations and Consequences | D1175 | D1177 |
| 21 | 11/2/2018 | EMS and Memo re: Allegations and Consequences | D1 | D1 |
| 22 | 11/4/2018 | Pipes to Fink email: Plaintiff's allegations | D995 | D997 |
| 23 | 8/22/2019 | Email to Plaintiff re: Roman's responsibilities | D1278 | D1280 |
| 24 | 4/23/2019 | McNulty email to Pipes - complaining of Greg | D21 | D23 |
| 25 | 6/10/2019 | McNulty email to Pipes - complaining of Greg | D26 | D28 |
| 27 | 5/10/2019 | McNulty to Pipes re "Thoughts on Gregg's Position" | D37 | D37 |
| 28 | 5/10/2019 | Pipes to McNulty re "Thoughts on Gregg's Position" | D65 | D65 |
| 29 | 10/31/2018 | Plaintiff's text messages to Barbounis | D9905 | D100005 |
| 30 | 1/14/2020 | Pipes emails to Plaintiff re Audit | D4498 | D4498 |
| 31 | 11/5/2019 | Pipes and Plaintiff email exchange re payment processed | D4517 | D4517 |
| 32 | 11/3/2018 | Memo - Emergency Admin Staff meeting (11.5.18) | D45 | D48 |
| 33 | 3/11/2019 | Plaintiff email to Fink re Greg's return | D57 | D58 |
| 34 | 2/8/2018 | Gary Gambill Email re: Resignation | D5209 | D5209 |

| 35 | N/A | Texts from Barbounis to Plaintiff re Israel trip | D9182 | D9182 |
|----|-----|--------------------------------------------------|-------|-------|
| 36 | N/A | Texts from Barbounis to Plaintiff re Israel trip | D9186 | D9186 |
| 37 | N/A | Texts from Barbounis to Plaintiff re Israel trip | D9197 | D9197 |
| 38 | N/A | Texts from Barbounis to Plaintiff re Israel trip | D9199 | D9199 |
| 39 | N/A | Texts from Barbounis to Plaintiff re Israel trip | D9201 | D9201 |
| 40 | N/A | Texts from Barbounis to Plaintiff re Israel trip | D9203 | D9203 |
| 41 | N/A | Text from Bennet to Pipes | D9227 | D9227 |
| 42 | N/A | Text from Bennet to Pipes | D9229 | D9229 |
| 43 | N/A | Text from Bennet to Pipes | D9231 | D9231 |
| 44 | 8/26/2019 | Tweet from Pipes | D9336 | D9336 |
| 45 | N/A | Tweet from Pipes | D9338 | D9338 |
| 46 | 11/4/2018 | Email from McNulty | D2 | D2 |
| 47 | 11/4/2018 | Email from Pipes | D3 | D4 |
| 48 | 11/4/2018 | Emails between Barbounis and Pipes | D5 | D7 |
| 49 | 11/4/2018 | Emails between Pipes and McNulty | D8 | D10 |
| 50 | 11/4/2018 | Emails between Plaintiff and Pipes | D11 | D12 |
| 51 | 11/4/2018 | Email from Pipes to Everyone re NDA | D13 | D13 |
| 52 | 11/4/2018 | Emails from Pipes to Plaintiff | D14 | D14 |
| 53 | 11/6/2018 | Email from Pipes to Fink re New Terms of Employment | D16 | D16 |
| 54 | 3/27/2019 | Emails between McNulty and Fink re 3/5 Meeting | D17 | D18 |
| 55 | 4/17/2019 | Emails between Pipes and Barbounis re retaliation | D19 | D20 |
| 56 | 6/5/2019 | Email from Pipes to Plaintiff - Roman "irreplacable" | D25 | D25 |
| 57 | 4/23/2019 | McNulty email to Pipes re: Phone call w/ Matt Bennett | D31 | D31 |
| 58 | 4/25/2019 | Emails between McNulty and Pipes | D32 | D35 |
| 59 | 4/28/2019 | Email from Pipes to Brady & Plaintiff | D36 | D36 |
| 60 | 11/4/2018 | Letter from Pipes to Barbounis re: Roman sexual harassment | D49 | D49 |
| 61 | 11/4/2018 | Email from Pipes to McNulty re: Allegations and Consequences | D53 | D53 |
| 62 | 3/11/2019 | Email from McNulty to Fink re: Roman probationary status | D55 | D55 |
| 63 | N/A | List of Bonuses | D64 | D64 |
| 64 | 10/11/2019 | Brady's letter of resignation | D68 | D69 |
| 65 | N/A | MEF - Bylaws | D70 | D74 |
| 66 | N/A | MEF - Articles of Incorporation | D76 | D89 |
| 67 | 1/2/2014 | Email to Fink re: Increase to salary | D143 | D143 |
| 68 | N/A | MEF - Corporate Heirachy | D144 | D144 |

| 69 | May 2017 & Nov 201 | Brady's Confidentiality Agmts | D151 | D156 |
| 70 | Nov-18 | Delaney Yonchek Confidentiality Agmts | D188 | D190 |
| 71 | 6/10/2019 | Emails between McNulty Pipes | D970 | D970 |
| 72 | 4/24/2019 | Emails between McNulty and Plaintiffs | D971 | D971 |
| 73 | 3/14/2019 | Email between McNulty and Pipes | D973 | D973 |
| 74 | 3/8/2019 | Email re Bennet's offboarding | D974 | D975 |
| 75 | N/A | Barbounis Text Sceenshots | D980 | D981 |
| 76 | 11/5/2018 | Bennet's Confidentiality Agreement | D982 | D984 |
| 77 | 11/4/2018 | Barbounis' email signing Confidentiality Amgt and NDA | D985 | D988 |
| 78 | 8/7/2019 | Barbounis Letter of Resignation | D989 | D990 |
| 79 | 12/1/2018 | Email Plaintiff to Pipes re: Not reporting to Bennet | D998 | D998 |
| 80 | 11/21/2018 | Email Pipes - assigning Fink director | D999 | D1000 |
| 81 | 11/5/2018 | Barbounis and Pipes re: Allegations and Consequences | D1010 | D1015 |
| 82 | 4/23/2019 | Barbounis re: Complaints against Greg | D1103 | D1103 |
| 83 | 2/4/2020 | Email Pipes and Marnie - re Check | D1105 | D1105 |
| 84 | 6/28/2019 | Email from Pipes to Marnie re: 5 women who started suit | D1106 | D1106 |
| 85 | 3/13/2019 | Pipes' email to Roman re: Change in the terms and condition | D1108 | D1111 |
| 86 | 11/4/2018 | Barbounis Emails to Pipes w/ all attachments | D1119 | D1130 |
| 87 | 3/14/2019 | Email Pipes to McNulty | D1132 | D1132 |
| 88 | Nov-18 | Emails between Barbounis and Pipes w/ attachments | D1140 | D1155 |
| 89 | 4/23/2019 | Pipes and Plaintiff email | D1156 | D1156 |
| 90 | 2/28/2019 | Plaintiff's email to Pipes | D1165 | D1167 |
| 91 | 9/13/2019 | McNulty's Letter of Resignation | D1323 | D1324 |
| 92 | 6/5/2019 | Email between Plaintiff and Pipes re Roman | D1318 | D1320 |
| 93 | 6/5/2019 | Email between Plaintiff and Pipes re Roman | D1294 | D1297 |
| 94 | Nov-18 | Conditions of Roman's employment | D1201 | D1209 |

**Plaintiff reserves the right to use any and all exhibits produced in connection with Defendants'**
**Production of Documents and Plaintiff's Production of Documents exchanged during and**

# EXHIBIT C



   

| HOME | PROJECTS ▾ | ACTIVITIES ▾ | MIDDLE EAST QUARTERLY ▾ | MEDIA ▾ | ARCHIVES ▾ | ABOUT ▾ | DONATE |

# Middle East Forum Board of Governors

## Officers

President: Daniel Pipes
Chairman: Steven Levy
Vice Chairman: Joshua Katzen
Treasurer: Lawrence Hollin
Secretary: Gregg Roman

## Executive Committee

Chairman: Steven Levy
Lawrence Gould
Lawrence Hollin
Richard Irving
Joshua Katzen
Andrew Lappin
Harley Lippman
Daniel Pipes
Judy Friedman Rosen
Scott Rosenblum
James H.M. Sprayregen
David P. Steinmann

**SUBSCRIBE TO THE MEF MAILING LIST**

Type your email here...    Submit

**LATEST ARTICLES**

The Rise of the Crypto-Islamists
Sam Westrop

Only Israel Can Crown Hamas Victor
Gregg Roman

How Erdoğan's Miscalculation Crippled Turkey's Aerial Firepower
Burak Bekdil

US, Israel Should Add Egypt, UAE to Noble Dina Military Drill
Bradley Bowman, Seth Frantzman and Ryan Brobst

Lebanon Has Entered a Cycle of Unending Crisis
Seth J. Frantzman

**LATEST WEBINARS**

Ilan Berman: The U.S. Must Fight Islamism, not Just Jihadis

Efraim Karsh: Israel's Arab Citizens Are the "Main Danger" to Its Future

## Board of Governors

Wilma G. Aeder
Jack Bershad
Marc Paul Blum
Nordahl Brue
William Comanor
Janet Doerflinger
David E. Edman
Marc Epstein
Donald G. Ginsberg
Stanley D. Ginsburg
Brian Grodman
Gaye Slater Gross
Warren Grover
Robert Immerman
Georgette Joffe
Lawrence J. Kanter
Timothy Kapshandy
Arthur Karafin
Joshua Landes
Joel Levine
Robert J. Levine
Peter B. Levy
Margo Spitz Marbut
Adam Milstein
Mort Mower
James Pollack
Adrienne Price
Rick Richman
Howard Rosenbloom
Josiah Rotenberg
Milton S. Schneider

Danger" to Its Future

**David Menashri: American Resolve Can Stop Iran's "March towards a Nuclear Weapon"**

**Brenda Shaffer: Non-Persian Ethnic Minorities in Iran May Be Ripe for Revolt**

*Sign Up for Forthcoming Webinars*

### LATEST PRESS RELEASES

**MEF Fellow Warns Egyptians of the Muslim Brotherhood**

**Sen. Grassley Opposes Samantha Powers Nomination Because of Terror Finance Scandal Uncovered by MEF**

**MEF Report: eBay Founder Funds Anti-American, Anti-Israel Scholarship**

### LATEST MEQ ARTICLES

**Nasser and the Palestinians**
Michael Sharnoff

**Rethinking the "Arab Spring": Winners and Losers**
Hillel Frisch

**Rethinking the "Arab Spring": Just a Media Event?**
Eyal Zisser

**Give War a Chance: Arab Leaders Finesse Military Defeat**
Daniel Pipes

**Iran's Quandary on Nagorno-Karabakh**
Arvin Khoshnood and Ardavan Khoshnood

Milton S. Schneider
Lindy L. Snider
Hilary Till

## Founders Board

Dr. Yehuda Baskin
Sam E. Beller
Dr. Howard Bleich
Susan Gardos Bleich
Richard Calmas
Howard M. Casper
Roger A. Gerber, Esq.
Benjamin H. Gordon
James Kahn
David J. Kudish
Murray S. Levin
Michael Mooreville
Herbert J. Nevyas
Irene Pipes
Mark H. Rubin
William Seltzer
Joseph Shafran
David Shifrin
Orna Shulman
Marilyn Stern
Jonathan Torop
George A. Violin
David W. Wachs
Michael A. Weiss
Maxine Wolf
Joseph S. Zuritsky

# EXHIBIT D

| | |
|---|---|
| **From:** | Gregg Roman [Roman@meforum.org] |
| **Sent:** | 11/9/2018 9:54:26 PM |
| **To:** | Daniel Pipes [pipes@meforum.org] |
| **CC:** | Marc Fink [fink@meforum.org] |
| **BCC:** | Gregg Roman [gregg.roman@gmail.com] |
| **Subject:** | Re: new, interim terms for your employment at the Middle East Forum |
| **Attachments:** | contract.RomanGregg 2018-11-06.pdf |

Dear Daniel,

Please find attached the signed employment agreement.

Thank you,

Gregg

Notes on technology transfer:

- Asana (Marnie Meyer) – Done.
- Slack (Marnie Meyer) – I saw Matt's e-mail about Telegram. Should I delete this?
- Dropbox (Marnie Meyer) – Done.
- Zenefits (Marnie Meyer) – She told me she called them this morning and she's now the administrator.
- Salesforce (Matt Bennett) – Matt is a global administrator; I believe my account status has been reset since my e-mail was reset.
- Contactually (Matt Bennett) – Asked customer support to transfer ownership. No response yet to my support ticket.
- Twitter (Lisa Barbounis) – Delaney also has the password for this. It's not registered to my e-mail, I think it's on Eman's.
- YouTube (Lisa Barbounis) – I don't have the login for this since I transferred it to Delaney a few months ago. I've asked her to give it to Lisa. She should have it.
- Facebook (Lisa Barbounis) – I don't have her listed on my Facebook. Matt can add her though as he is an administrator.
- LexisNexis (Marc Fink) – I don't have access to this, I believe it's under Marnie and Sam's e-mails. I also don't think we have an active public records account yet.

---

**From:** Daniel Pipes <pipes@meforum.org>
**Date:** Tuesday, November 6, 2018 at 10:24 PM
**To:** Gregg Roman <Roman@meforum.org>
**Cc:** Marc Fink <fink@meforum.org>, Marnie Meyer <meyer@meforum.org>
**Subject:** new, interim terms for your employment at the Middle East Forum

November 6, 2018

Dear Gregg:

Effective Nov. 5, your job description has changed. In particular, you are no longer running the administration of the Middle East Forum.

CONFIDENTIAL

D0001201

Pursuant to our phone conversion on that date, I formally offer you new, interim terms for your employment. (I emphasize interim, because the office and I are reeling from the sudden changes this month and must preserve the right to make further changes.)

Title

You keep the title of director.

Responsibilities

You will have the following responsibilities:

- Managing the Forum's external projects and initiatives, including all the directors of the Forum's formal projects except the *Middle East Quarterly* editor.
- Fundraising, in meetings, on the telephone, and in writing.
- Making media appearances on Forum-related topics.

Restrictions

You will have the following restrictions until further notice:

- No involvement in the Forum's accounting, finances, office affairs, personnel issues, and property management.
- No authority over the Forum's administrative staff.
- No authority to approve expenses of projects or initiatives.
- No authority to hire or fire Forum employees, including project directors.
- No authority to offer or approve contracts on behalf of the Forum.
- No authority over Middle East Forum Education Fund monies.
- No access to the Forum's Philadelphia office.
- No contact with the Forum's female employees outside of business hours other than using Forum e-mail. That means no after-hours telephone calls, texts, other e-mails, social media, drinks, meals, outings, trips, shared lodgings, and so forth. And during business hours, interactions will be business-related, within reason.

Conditions

As a condition precedent for this new, interim offer of employment, you shall turn over to designated staffers your administrative control over the following platforms:

- Asana (Marnie Meyer)
- Slack (Marnie Meyer)
- Dropbox (Marnie Meyer)
- Zenefits (Marnie Meyer)
- Salesforce (Matt Bennett)
- Contactually (Matt Bennett)
- Twitter (Lisa Barbounis)
- YouTube (Lisa Barbounis)
- Facebook (Lisa Barbounis)
- LexisNexis (Marc Fink)

In case other platforms have been omitted, the Forum reserves the right to add those to this list.

Salary

Your salary and benefits remain unchanged. Your salary will be payable in accordance with the Forum's standard payroll practice and subject to applicable withholding taxes. Because your position is exempt from overtime pay, your salary will compensate you for all hours worked.

Expenses

You agree not to incur any liabilities with third parties and only to expend your own resources with the expectation of reimbursement by the Forum when specifically pre-approved by me in writing, on a case by case

D0001202

basis. If the expense is approved by me, you shall lay out the funds, then submit a reimbursement form to the Forum's controller.

Travel

You will continue to travel on MEF business, according to the procedures specified under Expenses, above. When traveling, you must keep in mind that you are working for a non-profit that legally and morally must spend money thriftily. That means, unless exceptions are specifically permitted, economy class on trains and planes, standard business rooms in hotel, and standard rideshare and rental cars. In particular, when possible, air travel must be booked weeks in advance to get advantageous prices.

Other terms

You will be an employee-at-will, meaning that either you or the Forum may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Forum, its agents, or representatives, are superseded by this offer letter. To re-emphasize, these interim terms are subject to change.

You shall work remotely, from anywhere of your choosing.

You are eligible to participate in the following benefit plans:

- Group medical health, which may include dental and vision coverage depending on the plan you choose.
- 403(b) retirement.
- Life insurance.
- Short-term and long-term disability.

(Please note: participation in these benefits may *reduce* the amount of your all-inclusive salary.)

If you wish to accept employment with the Forum under these terms, please indicate so by signing two copies of this letter, returning one copy to me. You may do so by regular mail or by scanning this letter and e-mailing it to Marc and me.

This offer and all terms of employment stated in this letter will expire at 5:00 PM Eastern Standard Time on Friday, November 9, 2018.

Sincerely,

Daniel Pipes
President, Middle East Forum

With the signature below, I accept employment with the Middle East Forum, under the terms set forth in this letter.

_____          _____
Gregg Roman                                                                        Date

CONFIDENTIAL

November 6, 2018

Dear Gregg:

Effective Nov. 5, your job description has changed. In particular, you are no longer running the administration of the Middle East Forum.

Pursuant to our phone conversion on that date, I formally offer you new, interim terms for your employment. (I emphasize interim, because the office and I are reeling from the sudden changes this month and must preserve the right to make further changes.)

<u>Title</u>
You keep the title of director.

<u>Responsibilities</u>
You will have the following responsibilities:
- Managing the Forum's external projects and initiatives, including all the directors of the Forum's formal projects except the *Middle East Quarterly* editor.
- Fundraising, in meetings, on the telephone, and in writing.
- Making media appearances on Forum-related topics.

<u>Restrictions</u>
You will have the following restrictions until further notice:
- No involvement in the Forum's accounting, finances, office affairs, personnel issues, and property management.
- No authority over the Forum's administrative staff.
- No authority to approve expenses of projects or initiatives.
- No authority to hire or fire Forum employees, including project directors.
- No authority to offer or approve contracts on behalf of the Forum.
- No authority over Middle East Forum Education Fund monies.
- No access to the Forum's Philadelphia office.
- No contact with the Forum's female employees outside of business hours other than using Forum e-mail. That means no after-hours telephone calls, texts, other e-mails, social media, drinks, meals, outings, trips, shared lodgings, and so forth. And during business hours, interactions will be business-related, within reason.

<u>Conditions</u>
As a condition precedent for this new, interim offer of employment, you shall turn over to designated staffers your administrative control over the following platforms:
- Asana (Marnie Meyer)
- Slack (Marnie Meyer)
- Dropbox (Marnie Meyer)
- Zenefits (Marnie Meyer)
- Salesforce (Matt Bennett)
- Contactually (Matt Bennett)
- Twitter (Lisa Barbounis)
- YouTube (Lisa Barbounis)
- Facebook (Lisa Barbounis)
- LexisNexis (Marc Fink)

In case other platforms have been omitted, the Forum reserves the right to add those to this list.

<u>Salary</u>

Your salary and benefits remain unchanged. Your salary will be payable in accordance with the Forum's standard payroll practice and subject to applicable withholding taxes. Because your position is exempt from overtime pay, your salary will compensate you for all hours worked.

Expenses

You agree not to incur any liabilities with third parties and only to expend your own resources with the expectation of reimbursement by the Forum when specifically pre-approved by me in writing, on a case by case basis. If the expense is approved by me, you shall lay out the funds, then submit a reimbursement form to the Forum's controller.

Travel

You will continue to travel on MEF business, according to the procedures specified under Expenses, above. When traveling, you must keep in mind that you are working for a non-profit that legally and morally must spend money thriftily. That means, unless exceptions are specifically permitted, economy class on trains and planes, standard business rooms in hotel, and standard rideshare and rental cars. In particular, when possible, air travel must be booked weeks in advance to get advantageous prices.

Other terms

You will be an employee-at-will, meaning that either you or the Forum may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Forum, its agents, or representatives, are superseded by this offer letter. To re-emphasize, these interim terms are subject to change.

You shall work remotely, from anywhere of your choosing.

You are eligible to participate in the following benefit plans:

- Group medical health, which may include dental and vision coverage depending on the plan you choose.
- 403(b) retirement.
- Life insurance.
- Short-term and long-term disability.

(Please note: participation in these benefits may *reduce* the amount of your all-inclusive salary.)

If you wish to accept employment with the Forum under these terms, please indicate so by signing two copies of this letter, returning one copy to me. You may do so by regular mail or by scanning this letter and e-mailing it to Marc and me.

This offer and all terms of employment stated in this letter will expire at 5:00 PM Eastern Standard Time on Friday, November 9, 2018.

Sincerely,

Daniel Pipes
President, Middle East Forum

With the signature below, I accept employment with the Middle East Forum, under the terms set forth in this letter.

_____          _____
Gregg Roman                                              11/09/2018
                                                                  Date

CONFIDENTIAL                                                          D0001206

# EXHIBIT E

Matthew Bennett
Sorry
20:53
But it's weighing on me
20:53
If I did what gregg did, would I still be employed?

DP

20:55
Daniel Pipes
There are two main reasons he is still employed.

1. The outside world does not appreciate drama.

2. He has skills that we need now. Were he suddenly gone, we'd be in trouble.

MB

20:56
Matthew Bennett
But between us
20:57
Just you and I
20:57
Do you want him to develop your legacy?

DP

21:00
Daniel Pipes
no, that ended two months ago. He's doing a job.

MB

21:02
Matthew Bennett
You told me not to get emotional about donors and donations
21:03
I watched and read as you resigned from the GOP and inspired me to adopt your vision of donors and fundraising
21:03
Adding to the inspiration from your commentary article outlining ivp
21:04
I am most certainly not emotional about those things; what I am emotional about is you and MEF

DP

21:05
Daniel Pipes
you make me smile. My view is that if do a good job and stay true to ourselves, things will work out. And, we're not doing badly.
21:06
ot - is Marc Epstein on the board of governors?

MB

21:06
Matthew Bennett
I want to do more than make you smile
21:07
I'm offering the next 30 years of my life to take your life's work into perpetuity
21:07
To dedicate myself to it and live, breathe and sleep it
21:08
All the articles you ever wrote, it only took two to capture me forever
21:08
Your brilliance with the ivp commentary article and integrity with resigning from the GOP
21:09
That's why I'm still here and pleading with you to entrust me with your legacy

DP

21:54
Daniel Pipes
Well, thank you for the kind words and the dedication. I am ready to give you more responsibility - have already - and you face no limits. Prove what you can do.
Be creative.

D0006068