UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARNIE O'BRIEN, | . | Case No. 2:19-cv-06078-JMG |
| | . | |
| Plaintiff, | . | |
| | . | U.S. Courthouse |
| v. | . | 601 Market Street |
| | . | Philadelphia, PA 19106 |
| THE MIDDLE EAST FORUM | . | |
| et al., | . | |
| | . | |
| Defendants. | . | |
| | . | July 29, 2021 |
| . . . . . . . . . . . . . | . | 11:08 a.m. |

TRANSCRIPT OF TRIAL DAY ONE – JURY SELECTION
BEFORE HONORABLE JOHN M. GALLAGHER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          SUSAN C. KEESLER, ESQ.
                            DEREK SMITH LAW GROUP PLLC
                            1835 Market Street, Suite 2950
                            Philadelphia, PA 19103

                            ERICA A. SHIKUNOV, ESQ.
                            POND LEHOCKY STERN GIORDANO
                            2005 Market Street, 18th Floor
                            Philadelphia, PA 19103

For the Defendants:         LAURI A. KAVULICH, ESQ.
                            JAKOB F. WILLIAMS, ESQ.
                            KEVIN LEVINE, ESQ.
                            MARGARET M. DIBIANCA, ESQ.
                            CLARK HILL PLC
                            Two Commerce Square
                            2001 Market Street, Suite 2620
                            Philadelphia, PA 19103

                            JONATHAN R. CAVALIER, ESQ.
                            LEIGH ANN BENSON, ESQ.
                            COZEN O'CONNOR
                            1900 Market Street
                            Philadelphia, PA 19103

Audio Operator:             KENNY DUVAK

TRANSCRIBED BY:             NEAL R. GROSS

2

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

1

1          DEPUTY CLERK STEIN:  All rise.  The United States
2   District Court for the Eastern District of Pennsylvania is now
3   in session, Judge John M. Gallagher presiding.
4          THE COURT:  Thank you, please be seated.  Good
5   morning, ladies and gentlemen, thank you for being here today.
6   Before we get started, I'm going to ask my Courtroom Deputy,
7   Christine Stein, to administer the oath.  Ms. Stein, would you
8   please do so?
9          DEPUTY CLERK STEIN:  Jurors, will you please stand
10  and raise your right hand?  Do you swear or affirm that you
11  will truthfully answer the questions directed to you on the
12  issue now before this Court so help you God, or you do so
13  affirm?
14         JURORS:  I do.
15         Thank you, please be seated.
16         THE COURT:  Thank you again, folks, good morning once
17  again.
18         My name is John Gallagher, I'm a judge here, a
19  District Court Judge in the Eastern District of Pennsylvania,
20  this is a federal trial court which covers a total of nine
21  counties, Philadelphia, Berks, Bucks, Chester, Delaware,
22  Lancaster, Lehigh, Montgomery, and North Hampton Counties.
23         I'm doing my best to communicate with you, as we've
24  all been doing for the past year, through masks.
25         I understand that the current CDC guidance is the

1   same as the guidance from the City of Philadelphia and the

2   Commonwealth of Pennsylvania, and that does allow fully

3   vaccinated people to gather indoors without masks.

4            For today, I think we're just meeting each other, I

5   would suggest we keep our masks on while we do jury selection.

6            As you could tell, the Court staff has put a lot of

7   work in trying to build in some social distancing and myself,

8   the lawyers will be very respectful and mindful of that.

9            However, it may become necessary, as you probably

10  notice, I'm doing a little bit already, for me to cheat and

11  lift the masks to be able to speak clearly.

12           We have an excellent recorder operator over here and

13  my friend, Kenny, but he can only get an accurate record if he

14  can hear us.  So, if you do see myself or Counsel cheating a

15  bit with the masks, I hope you'll please excuse us, we're only

16  going to do it as necessary.

17           Ms. Stein, can I ask you to distribute the juror list

18  to Counsel?

19           So, folks, it will come as no surprise to you at this

20  point that we're here today to pick a jury and it's for a civil

21  trial.  I know you saw the video, you met Mr. Lombardo, our

22  excellent jury coordinator, but some of the things he would

23  have shared with you I think are worth repeating.

24           It's an understatement to say that jurors play an

25  indispensable role in our system of justice.

1       It is truly amongst the highest duties of citizenship

2  here in the United States and you don't have to look any

3  further to know that's true than the U.S. Constitution, where

4  the right to a jury trial has been enshrined since the founding

5  of our nation.

6       While the Judge, myself, I determine the law that's

7  applied in each case, it is the jury who determines the facts.

8   So, we need juries that exhibit sound judgment, honesty, and

9  impartiality.

10       In a very real sense, it is jurors that ensure the

11  fair administration of justice in our country.  I also

12  appreciate, ladies and gentlemen, that jury duty can also be an

13  inconvenience, it's not something that you planned in your

14  calendar at the start of the year, that's for sure.

15       But that inconvenience is outweighed by the

16  importance of the jury's role in assuring that our society is a

17  just one and a fair one.

18       The parties here, each one, and they're each entitled

19  to a fair, impartial, responsible and serious-minded jury, just

20  as each of us would want if it were our own rights and duties

21  that were in dispute, or those of our family members.

22       As I mentioned a few moments ago, this is a civil

23  case.  Cases before the United States District Court are

24  divided into two general categories, if you will.  There's

25  criminal cases and there's civil cases.

1          Criminal cases, again, probably stating the obvious

2     here, are those in which individuals, or maybe organizations,

3     are charged with breaking criminal laws, crimes.  Civil cases,

4     such as this case, involve disputes over the rights and the

5     duties of the parties involved in the case.

6          In this case before us, as a summary, Plaintiff

7     Marnie O'Brien alleges that she was subjected to a pattern of

8     sexual harassment by her boss, Greg Roman, while worker as an

9     employee of the Middle East Forum.

10          As a result, Ms. O'Brien has filed suit for a hostile

11     work environment and gender discrimination against Mr. Roman,

12     the Middle East Forum, and Middle East Forum President, Dr.

13     Daniel Pipes.

14          She brought this suit under Title 7 of the Civil

15     Rights Act of 1964 and the Pennsylvania Human Relations Act.

16     The Defendants deny all of the allegations against them and

17     they argue that they addressed any concerns articulated by Ms.

18     O'Brien promptly and effectively.

19          Mr. Roman has also filed a counter-claim against Ms.

20     O'Brien for abuse of process, alleging that Ms. O'Brien filed a

21     retaliation complaint against Mr. Roman for allegedly

22     sabotaging prospective job opportunities despite knowing that

23     Mr. Roman was not, in fact, the reason that she was not offered

24     these jobs.

25          With this brief summary in mind, I'd like to offer

1  you some preliminary instructions regarding how things will

2  proceed this morning.  I'm going to ask you a series of yes or

3  no questions and these questions are important.

4           They're designed to identify any potential bias or

5  even subconscious predisposition towards the facts in this

6  case.  We want to make sure that we're getting fair juries and

7  jurors who are able to render a fair and impartial verdict.

8           So, I ask you, pay close attention to the questions

9  that are being asked, that way, we won't have to engage in any

10  repetition.  If you did not hear or understand the question,

11  please, raise your hand, let me know if I'm talking too fast,

12  whatever it might be, and I'll be happy to repeat or explain

13  the question.

14           During this initial phase or stage of the

15  questioning, because there will be two stages, you will not be

16  required to answer anything verbally or explain your answers.

17  Instead, I will ask you to raise your hand to indicate a yes

18  answer to any of these initial questions.

19           If you do not raise your hand in response to a

20  question, then we can assume that your answer is no.  I believe

21  each of you have numbers that if you do raise your hand, please

22  also show us the number.

23           After we finish that questioning, this initial

24  questioning, we'll bring each of you right back into chambers

25  over my right shoulder here for some brief follow-up

1   questioning by me and by Counsel.

2           There, if there's any elaboration to those yes or no

3   questions, that's where we will be able to hear it.  It's of

4   utmost importance, I can't overstate the importance of

5   answering the questions truthfully.

6           You are all here, you have shown the civic duty that

7   we need and appreciate from our jurors, but it's an absolute

8   must that everyone is truthful.  Any untruthful answers could

9   result in serious punishment.

10          So, again, stating the obvious, we all have to be

11  completely truthful in this questioning.  Are there any

12  questions about what I've said so far before we get to the yes

13  or no questions?  Okay, seeing no hands, we'll begin, Counsel.

14          First question, folks, have you ever served as a

15  juror in a criminal or civil case or as a member of a grand

16  jury in either state or federal court?  Please raise your hand

17  and let us see the numbers.

18          We have eight and nine.  Just eight and nine?  Okay,

19  very good.  See, that wasn't so bad, right?  We'll follow like

20  that for a few minutes.

21          Have you or anyone in your immediate family ever

22  participated in a lawsuit, either as a party, a witness, or

23  some other capacity?  I see 13 upside down, 14, 15, 9, 23, and

24  24.

25          JUROR:  Does work count?

1        THE COURT:  For now let's say yes and then we can

2   follow it.  See what you started?  6, 3, 16, 26, 13 again, and

3   28.  Can you keep them up one more moment?  We just want to

4   make sure the Counsel and my staff can capture all the

5   information.

6        Thank you very much, folks.  Do any of you in the

7   jury pool know anyone else in the jury pool prior to coming

8   here to the courthouse today or this week?  There's no hands

9   there.

10        Do you, your friends, or any member of your immediate

11   family have any formal legal training or work in the legal

12   profession either as a judge, a lawyer, a paralegal, a legal

13   assistant, a legal Secretary, or any similar position?

14        Please hold up your numbers if so.  I think we have

15   9, 10, and 12, 16 and 17.

16        JUROR:  Does that include law enforcement?

17        THE COURT:  No, not as a law enforcement officer but

18   in a legal capacity.  I mentioned that the Plaintiff in this

19   case, her name is Marnie O'Brien and she's from Gloucester

20   County, New Jersey.

21        Are any of you or as far as you know your friends or

22   members of your immediate family acquainted with Ms. O'Brien

23   and her family?  Seeing no responses.

24        JUROR:  Can we have Ms. O'Brien slide down her mask

25   so that we can see her face?

1          THE COURT:  I think that would be appropriate, sure.

2   Would you please, Ms. O'Brien?  Thank you for that.  Ms.

3   O'Brien is represented by attorneys Erica Shikunov and Susan

4   Keesler from the Derek Smith Law Group.

5          Are you, or again, any of your friends or members of

6   your immediate family acquainted with Attorney Shikunov,

7   Attorney Keesler, or any members of their family? They're

8   sitting closest to you at Counsel's table.

9          Thank you, seeing no hands, a related question, have

10  you, your friends, or any members of your immediate family had

11  any business dealings, been represented by, or had any legal

12  action brought against you, or been employed by either Attorney

13  Shikunov, Attorney Keesler, or the Derek Smith Law Group?

14         Again, no responses.  The Defendants in this case are

15  Daniel Pipes, Greg Roman, and the Middle East Forum, sitting

16  closest to me.

17         Have you or your friends or any member of your

18  immediate family had any business dealings with, donated to, or

19  been employed by the Middle East Forum?

20         No hands.  And related to that, other than in the

21  business dealings reference, have you, your friends, or your

22  immediate family members, are you acquainted in any way with

23  Daniel Pipes, Greg Roman or any members of their families?

24         The Defendants are represented by attorneys Margaret

25  DiBianca and Jakob Williams of the law firm Clark Hill, and

1    Jonathan Cavalier, of the law firm Cozen O'Connor.

2              Have you, your friends, or any members of your

3    immediate family had any business dealings with or been

4    represented by, or had legal action brought against you by, or

5    been employed by, either Attorney DiBianca, Attorney Williams,

6    Attorney Cavalier, Clark Hill Law Firm or Cozen O'Connor Law

7    Firm?

8              Again, no hands.

9              There's a number of names of people who might be

10   witnesses in this case or may be otherwise mentioned in the

11   case.

12             I want to share those names with you and I will be

13   asking you whether you or your friends or any members of your

14   immediate family are acquainted with any of these individuals?

15             First, Lisa Barbonous?  No hands.  Matthew Ebert?  No

16   hands.  Matthew Bennet?  No hands.  Mark Fink?  No hands.

17   Patricia McNulty? No hands.  Katriona Brady?  No hands.

18   Delaney Yonacheck?  No hands.  Lee Mervil?  No hands.

19             Dr. Kendra Kubala?  No hands.  Liz Bligan?  No hands.

20   Look at that, Number 3, thank you.  David Beety?  Stacy Roman?

21   Beety and Roman, no hands.  Thelma Prosser?  No hands.  Gary

22   Gambill?  No hands.

23             Elliot Miller?  No hands.  Steven Schimel?  No hands.

24   Frank Imperial?  No hands.  Charles Rolinski?  No hands.  Dr.

25   Reed Goldstein? No hands.

1          Prior to entering the courthouse today, did you have

2     any knowledge of this lawsuit or of Ms. O'Brien's allegations

3     in the lawsuit or the counter-claim made by Mr. Roman?

4          Prior to entering to courthouse today, did you have

5     any knowledge of the lawsuits brought by Lisa Barbonous,

6     Patricia McNulty, Katriona Brady, or Delaney Yonacheck?

7          Do you have any prior knowledge, impressions, or

8     experiences regarding the Middle East Forum that would affect

9     your ability to be impartial in this case?

10          Do you have any negative feelings towards the country

11     of Israel?  Do you believe that you would be able to weigh with

12     equal fairness and impartiality the testimony presented by Ms.

13     O'Brien, Daniel Pipes, Greg Roman, and representatives of the

14     Middle East Forum?

15          Do you believe that you would be more inclined to

16     decide the case in favor of one party over another based on the

17     fact that the Plaintiff here is an individual and the

18     Defendants are a not-for-profit corporation or officers of a

19     not-for-profit corporation?

20          Number 13.

21          Have you, your friends, or any members of your

22     immediate family ever worked in human resources or personnel

23     administration?  We have some numbers here.  1, 2, 3, 10, 12,

24     13, 14, 20, 29, 30.  Did I miss anybody?

25          Okay, thank you.  Have any of you ever terminated an

1   employee or recommended that an employee be terminated?  We

2   have some numbers here.  3, 6, 10, 11, 12, 13, 14, 18, 22, 28,

3   29. Did I get everybody?  Okay, thank you.

4          Have you, your friends, or any members of your

5   immediate family ever had a dispute with an employer either

6   informally or by filing a complaint with a government agency or

7   a lawsuit against them?

8          We have Number --

9          JUROR:  Just as an explanation, I once filed a

10  complaint with an employer about an EEOC issue.

11         THE COURT:  Why don't you hold your number up and

12  we'll ask you about it in the back?  Thank you for bringing it

13  up.  18 and 24?  Got you, thank you.

14         Have you ever filed a complaint of a charge of

15  discrimination with the Equal Employment Opportunity

16  Commission, the Pennsylvania Human Relations Commission, or Any

17  Other Equal Employment Agency?  We have Number 18, she

18  anticipated it.

19         Have you, your friends, or any members of your

20  immediate family ever been forced to resign from employment due

21  to what you or they believed to be unlawful or unfair reasons?

22         We have Number 2 and 29.  Have you or someone you

23  know ever been subjected to sexual harassment in or outside of

24  the workplace?  We have 3, 12, 13, 15, 6, 16, 17, 20, 22, 23,

25  27, 28, and 29.

1          Did I miss anybody?  I think that's it.  23, I think

2     we have you, thank you. 15, we'll make sure and double-check,

3     thank you, 15.

4          Have you, your friends, or any members of your

5     immediate family ever applied for employment and not been

6     selected for the position under circumstances that you or they

7     believe were unfair or discriminatory?  Please answer yes by

8     showing us your number.

9          Have you or someone you know ever been accused of

10    sexual harassment in or outside of the workplace?  Have you or

11    someone you know ever been accused of discrimination based on

12    gender, race, religion, national origin, or age?

13         Number 23, thank you, Number 18, thank you.  Do you

14    believe that you would be unable to follow the Court's

15    instructions concerning the law to be applied in this case if

16    you personally disagreed with the law as given to you by me?

17         No hands.  Would you consider objections to any

18    evidence presented in this case as improper or view a party

19    negatively for making an objection?

20         Do you believe that you would decide this case on the

21    basis of sympathy rather than on the basis of the evidence and

22    the law as I give it to you?

23         Would your verdict in this case be influenced in any

24    way by factors other than the evidence presented in the

25    Courtroom, such as your religious beliefs, philosophical

1   beliefs, political beliefs, personal relationships, or your
2   profession?
3           Number 13, got you, thanks.  I'm sorry, 15, thank
4   you.
5           Having heard the questions that I put to you thus
6   far, do you have any concerns at all regarding your ability to
7   be fair and impartial in this case and render a verdict based
8   on the evidence presented and in the context of the
9   instructions that are provided to you by me on the law?
10          13 and 29 and 21.
11          Is there any reason at all that you can think of that
12  I haven't asked you, and again, this is still a yes or no, that
13  you cannot serve on the jury in this case?  9, 12, 29, and 15.
14          That's the first stage.  That wasn't too painful,
15  right?  Now we're going to go to have one-on-one conversations
16  where if there's anything that you want to share with us that
17  perhaps you don't want to say in front of a room full of
18  strangers you'll be more comfortable.          And of course, we
19  need you to do that, we need that complete honesty, it's what's
20  necessary for our system to work effectively and it's what's
21  fair for the parties.  So, that's what we'll do next.  Counsel,
22  anything before we move to chambers?
23          MS. KEESLER:  No, Your Honor, thank you.
24          THE COURT:  Christine?  I know jury duty is a lot of
25  waiting around, we're going to ask you to do that for a few

```
 1   minutes now, we'll talk to you shortly.  Thank you.

 2                (Whereupon, the above-entitled matter went off the

 3   record at 11:36 a.m. and resumed at 1:12 p.m.)

 4                THE COURT:  Hi, folks, we're making some good

 5   progress here and we're extremely grateful for your patience,

 6   which we're going to ask to draw on for a while longer.

 7                But we thought that we could hear stomachs growling

 8   and grumbling from the back there and we figured we would at

 9   least offer you some time to get something to eat.

10                You have about 45 minutes until we'll come back.  I

11   don't know if you're familiar with the area, there is a

12   cafeteria in the building that's adjacent to us on the left

13   without going outside.

14                I forget which floor it's on, Kenny, do you remember

15   what floor the cafeteria is on?

16                PARTICIPANT:  It's on the second floor, Your Honor.

17                THE COURT:  It's on the second floor, there's a small

18   snack shop on the first floor.

19                There are restaurants around here as well, time is a

20   little bit tight and so if you could take a break, stretch your

21   legs, get something to eat and come back here in 45 minutes?

22                We're going to just keep rolling along.  Again, I

23   know this takes some time and those benches are nothing you

24   would buy and put in your living room to sit on, but that's

25   what we have.  So, if you would all be back here in 45 minutes,
```

 1    we'll see you then.

 2              (Whereupon, the above-entitled matter went off the

 3    record at 1:13 p.m. and resumed at 2:16 p.m.)

 4              THE COURT:  Before we left, I should have given you

 5    an instruction not to discuss the case, and I didn't do that, I

 6    missed that.  So what I would have told you is I know you've

 7    heard very little about the case, I did give you a brief

 8    summary overview.

 9              Jurors, as I'll explain later, cannot discuss the

10    case even with other jurors until the case goes to

11    deliberation.  And therefore, I should have instructed you not

12    to discuss it if you were going out for a sandwich with

13    somebody else or anything like that.

14              So, I need to ask you now, you did nothing wrong, the

15    mistake is on me, but if any of you did discuss the case, you

16    need to let us know, we'll just take an extra minute with you

17    of questioning in the back with the lawyers.

18              So, I'll ask now, if you did discuss the case with

19    other jurors, please hold up your number like we did earlier

20    today.  All right, thank you very much, you did a better job

21    than me at following the rules you didn't even know existed so

22    I'm grateful for that.

23              We're going to continue with the individual voir

24    dire, I again can't overstate how grateful I am for your

25    patience, and I know Counsel and the parties feel the same way.

1    Thank you.

2              (Whereupon, the above-entitled matter went off the

3    record at 2:18 p.m. and resumed at 5:41 p.m.)

4              DEPUTY CLERK STEIN:  All rise, Court is again in

5    session.

6              THE COURT:  Please be seated.  A long day, folks,

7    thank you, I have the opportunity to thank you all individually

8    and I want to thank you again and as a group.

9              I won't spend a long time on it but I can't tell you

10   how impressive and how grateful we are for your service.  Now

11   that we've had an opportunity and Counsel have had an

12   opportunity to meet each of you, we're going to pick the jury.

13             This piece is the piece that goes the quickest, for

14   whatever that's worth, so I'm going to turn it over to Counsel,

15   they'll make selections.  Juries are selected by an inverse

16   selection, it's the process of elimination.

17             Some folks get chosen or not chosen because the

18   number they happen to draw and how close they are to the top of

19   the list or the bottom of the list, there's no takeaway here

20   other than thank you for what you've done today and going

21   forward if necessary, from the bottom of my heart.

22             Counsel?

23             MS. KEESLER:  I think I'm misunderstanding the method

24   as you described it.

25             THE COURT:  With the list, absent the causes, in

1   juror number order starting with the Plaintiff defense, back

2   and forth, three pre-emps each, and then we're picking from

3   numerical order top down.

4           (Pause.)

5           Counsel, are you ready to pass that up? Thank you

6   very much.  Folks, Ms. Stein, our Deputy Clerk, is going to ask

7   some folks to take different seats in just a moment.  If you

8   would, Ms. Stein?

9           DEPUTY CLERK STEIN:  Wanda McConnelly, you'll be

10  Juror 1, Nicholas Rosetti, you'll be Juror 2, Matthew Kozak,

11  you will be Juror 3, Ryan Charles, you will be Juror 4, Ryan

12  McHughes, you will be Juror 5.

13          Raymond Brooks, you will be Juror 6, Joseph Siwinski,

14  you will be Juror 7.  And Barbara Calvin, you will be Juror 8.

15          THE COURT:  Thank you, Ms. Stein.  Ladies and

16  gentlemen, we have a jury for this case, I'm going to ask them

17  to stay.

18          The rest of you, it's now 6:00 p.m., you've performed

19  above and beyond the call of duty today, your service is

20  terminated for this session and you're free to go home with our

21  gratitude, and please be safe going home.

22          On behalf of everybody, thank you for your

23  willingness to serve.

24          JUROR:  Are we required to report tomorrow?

25          DEPUTY CLERK STEIN:  You do not report tomorrow.

1            THE COURT:  Some good news after a long day.

2            JUROR:  Thank you.

3            THE COURT:  Ladies and gentlemen, you've been

4    selected for the panel in this case.  As I told you

5    individually, we're asking a lot of you, we're asking a little

6    bit more here.

7            It's of critical importance to the parties and to our

8    system of justice, your willingness to serve is really an

9    inspiration.  We're asking, again, a lot but collectively, we

10   all get a lot out of it as well and so we're not going to swear

11   you until tomorrow, swear you in, but Ms. Stein has some

12   paperwork about where we will be for the next four business

13   days.

14           If you have any questions, there's contact

15   information in there as well.  While she hands that out, there

16   is one instruction that I need to share with you so please

17   listen carefully.

18           You will likely her this multiple times over the next

19   several days, we are about to take a recess and during this

20   recess and any other recess, you must not discuss this case

21   with anyone including your fellow jurors, members of your

22   family, people involved in the trial or anyone else.

23           If anyone tries to talk to you about the case, do not

24   tell your fellow jurors but please let me know right away.  Ms.

25   Stein is going to be with us all throughout the trial, you'll

1   see her every day.

2          I don't think there will be any media coverage but do

3   not read, watch or listen to any news reports of the trial or

4   conduct any research or investigation, including on the

5   Internet.

6          You cannot use any electronic tools to communicate

7   with anyone about the case or to research relating to the case,

8   or to comment on the case.

9          Finally, we discussed this in the selection process,

10  remember, you must keep an open mind until all of the evidence

11  has been received and then at that point you will deliberate

12  and hear the views of your fellow jurors.

13         If at some point during the trial you need to speak

14  to me about anything, I'd ask you to give a signed note to Ms.

15  Stein, our Deputy Clerk.  I will probably repeat some version

16  of this instruction each time we break or perhaps I will just

17  ask you to recall what we're talking about right now.

18         These are very important and these rules are in place

19  to make sure that we have a fair trial.  So, it's late and I'm

20  asking you to be in Allentown tomorrow, our plan is to go from

21  9:00 a.m. until 5:00 p.m.

22         I know the first day it might be a little tricky, if

23  you're running late, if you're having any issues, be safe, safe

24  comes first and if an opportunity comes up to let Ms. Stein

25  know, then do that.

1          I know some of you will be coming a considerable

2     distance, we want you safe.  The timing is important but not as

3     important as your safety.  So, Counsel, are you satisfied with

4     the jury?

5               MR. KRAVULICH:  Very much so, Your Honor.

6               MS. KEESLER:  Yes, Your Honor.

7               THE COURT:  I just had a note suggested by Counsel in

8     this case and if you're agreeable, let me know by a nod of

9     heads.

10          We're thinking we'll start tomorrow at 10:00 a.m.

11     rather than 9:00 a.m., is that okay with everybody?  It's

12     unanimous.

13          Okay, that was your first hard decision. Folks,

14     again, I'm sorry, I hope it doesn't reduce the sincerity of my

15     gratitude by repeating it but I'm saying it again.  Thank you

16     from the bottom of my heart, be safe and safe travels home.

17               DEPUTY CLERK STEIN:  All rise, you may exit the

18     Courtroom, thank you.  Court is adjourned.

19                              *  *  *  *  *

20

<u>C E R T I F I C A T E</u>

       I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____     August 3, 2021
     Neal R. Gross


**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS

1323 RHODE ISLAND AVE., N.W.

(202) 234-4433        WASHINGTON, D.C.  20005-3701        www.nealrgross.com