IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARNIE O'BRIEN,<br>    Plaintiff,<br><br>    v.<br><br>THE MIDDLE EAST FORUM, *et al.*,<br>    Defendants. | Civil No. 2:19-cv-06078-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                             September 10, 2021

**I.  OVERVIEW**

  Following a seven-day jury trial on Plaintiff Marnie O'Brien's claims for gender discrimination under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"), a jury found that Plaintiff did not sustain her burden of proof and ruled in favor of Defendants Gregg Roman, Dr. Daniel Pipes, and the Middle East Forum ("MEF"). Plaintiff now seeks a new trial, arguing that the Court's decision not to instruct the jury using her novel interpretation of employer liability under Title VII constituted substantial error. Plaintiff further contends that the Court's decision to allow Defendant Roman to proceed with his colorable counterclaim for abuse of process, a claim on which Plaintiff prevailed, severely prejudiced her case. Finally, Plaintiff alleges that the Court erred in precluding a non-party witness from testifying that, while on a trip to Israel with Defendant Roman, she became so afraid of him that she slept with a knife. Plaintiff contends that each of these purported errors resulted in a grave injustice warranting a new trial. For the reasons set forth in greater detail below, Plaintiff's Motion is denied.

1

## II. FACTUAL BACKGROUND

Plaintiff filed a Complaint with this Court on December 23, 2019, alleging sexual harassment and gender discrimination under Title VII (Count I) and the PHRA (Count II). *See* ECF No. 1. On January 27, 2020, Plaintiff filed a second Complaint alleging unlawful retaliation by Defendants. The Parties stipulated to consolidate these Complaints on March 10, 2020. *See* ECF No. 16. On April 10, 2020, Defendants filed an Answer along with four counterclaims against Plaintiff and two third-party claims against her boyfriend, Matthew Ebert. *See* ECF Nos. 20, 21. Defendants' counterclaims included tortious interference with business relations (Count I), abuse of process (Count II), and civil conspiracy (Count III). *Id.* On August 3, 2020, Defendants filed a Motion to Dismiss Plaintiff's retaliation claim. *See* ECF No. 36. The Court granted Defendants' Motion on August 6, 2020. *See* ECF No. 37. On December 15, 2020, the Parties stipulated to dismissal of the third-party complaints against Mr. Ebert. *See* ECF No. 67. Defendants subsequently stipulated to dismissal of Counts I (tortious interference) and III (civil conspiracy) of the counterclaims against Plaintiff. *See* ECF No. 76.

On May 28, 2021, the Court denied the Parties' respective motions for summary judgment. *See* ECF No. 93. The Court subsequently held a seven-day jury trial on Plaintiff's Title VII and PHRA claims, as well as Defendant Roman's counterclaim for abuse of process. *See* ECF Nos. 132-142. The jury found for Defendants on the Title VII and PHRA claims, and found in favor of Plaintiff on the abuse of process claim. *See* ECF No. 143. Plaintiff thereafter filed the present Motion, arguing that the Court erred: (1) in denying Plaintiff's request for a jury instruction concerning her proposed "proxy theory" of employer liability; (2) in allowing Defendant to proceed with his counterclaim; and (3) for excluding testimony by a non-party witness alleging that she slept with a knife out of fear of Defendant Roman. *See* ECF No. 150.

### III. LEGAL STANDARD

A district court may grant a new trial "for any reason for which a new trial has…been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). This decision lies solely within the court's sound discretion. *Pierce v. City of Philadelphia*, 811 F. App'x 142, 148 (3d Cir. 2020). The court should grant a motion for new trial only when "the jury's verdict resulted in a miscarriage of justice or shocks the conscience." *Id.* (quoting *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999)). "Absent a showing of 'substantial' injustice or 'prejudicial' error, a new trial is not warranted" and the court should leave undisturbed a plausible jury verdict. *Goodwin v. Seven-Up Bottling Co. of Philadelphia*, No. 96-2301, 1998 WL 438488, at *3 (E.D. Pa. July 31, 1998) (citation omitted).

### IV. ANALYSIS

#### a. Proxy Theory of Liability

Plaintiff's Motion incorrectly states that the "Court determined [that] the issue of whether Defendant Roman was a proxy of Defendant Middle East Forum…was a question of fact for the jury." Pl. Mot. 6-7. In an attempt to then ascribe error to the Court, Plaintiff asserts that the subsequent failure to instruct the jury regarding Plaintiff's proposed "proxy theory"[1] of liability resulted in prejudicial error. *Id.* As reflected repeatedly throughout the record in this case, the Court never held that Mr. Roman's status as a proxy of MEF was a question of fact for the jury. *See, e.g.*, Trial Tr., vol. 6, 95:19-95:25, Aug. 6, 2021 (ECF No. 138). Instead, the Court ruled that it would instruct the jury using the standard for employer liability that was consistent with binding precedent and the Third Circuit Model Jury Instructions. Although this did not comport with Plaintiff's desire to introduce into this Circuit a new, previously unadopted interpretation of

---

[1] This theory is also sometimes referred to as the "alter-ego" theory of liability.

Title VII, the Court's decision to adhere to precedent did not render its jury instructions misleading or inadequate.

According to Plaintiff, Defendant Roman is a proxy for MEF by virtue of his status as a corporate officer. *See* ECF No. 99. As such, Plaintiff argues that Defendants should have been summarily precluded from asserting the *Faragher-Ellerth* affirmative defense to respondeat superior liability generally available to employers in Title VII cases. *Id.* In other words, the "proxy theory" holds that once a plaintiff demonstrates that her harasser is a corporate officer, an employer cannot offer an affirmative defense to a hostile work environment claim and should be found automatically liable. *See* Pl. Mot. 5. While some circuits have recognized and discussed this theory of employer liability, Plaintiff has not identified any conclusive authority demonstrating that this interpretation has been adopted by the Third Circuit Court of Appeals.[2]

To advance a hostile work environment claim under Title VII, a plaintiff must establish that: (1) they suffered intentional discrimination because of their sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017). In prior cases interpreting Title VII, the Supreme Court has borrowed from "the general common law of agency" in order to fashion a predictable standard for respondeat superior liability. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998). Plaintiff appears

---

[2] Plaintiff has previously based her argument on a footnote from *Durham Life Ins. Co. v. Evans*, wherein the Third Circuit acknowledged that there are multiple "bases for liability not relevant to our decision today…[including] cases in which the harasser's high rank makes him the employer's alter ego." *See* 166 F.3d 139, 152 n.8 (3d Cir. 1999). Contrary to Plaintiff's position, this authority does not support the notion that the "proxy theory" of liability, if proven, automatically precludes an employer from asserting an affirmative defense in Title VII cases. Furthermore, in *Suders v. Easton*, the Third Circuit explicitly declined to further explore the proxy theory of liability within the Title VII context. *See* 325 F.3d 432, 448 n.10 (3d Cir. 2003). Plaintiff has not identified, and the Court is not aware of, any authority wherein the Third Circuit has revisited this issue and adopted the interpretation urged by Plaintiff.

to conflate prior dicta discussing various agency theories, including the "proxy theory," with binding precedent establishing how employers may be held under Title VII. For example, Plaintiff contends that the Court's holding in *Ellerth* stands for the proposition that the proxy theory precludes an employer from asserting an affirmative defense. Pl. Mot. 5. However, in discussing how employers may be held vicariously liable for the actions of their employees in Title VII cases, the *Ellerth* Court merely acknowledged that the "proxy theory" was one of several bases for liability under the *general principles of agency law*. *See Ellerth*, 524 U.S. at 758. The Court then explained that since none of the parties in that case argued that the defendant was a proxy of his company, the Court would not explore this theory of liability further. *Id.* Indeed, while the Court relied on general agency theories as a guidepost for crafting a standard for employer liability, the Court also recognized that "common-law principles may not be transferable in all their particulars to Title VII." *Id.* at 755.

Within the context of Title VII, respondeat superior liability depends on whether the harasser is the victim's coworker or their supervisor. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). "If [a] supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.[3] But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior; and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided."[4] *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Therefore, "an employer does

---

[3] A tangible employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 216 (3d Cir. 2017) (quoting *Ellerth*, 524 U.S. at 761).

[4] This is known as the *Faragher-Ellerth* affirmative defense.

5

not have recourse to the [*Faragher-Ellerth*] affirmative defense when a supervisor's official act precipitates [a] constructive discharge; absent such a 'tangible employment action,' however, the defense is available to the employer whose supervisors are charged with harassment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 145-46 (2004); *see also Minarsky v. Susquehanna County*, 895 F.3d 303, 310 (3d Cir. 2018); *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 219-20 (3d Cir. 2017); *Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 323, 328 (3d Cir. 2015).

"[I]t would go too far…to make employers strictly liable whenever a supervisor engages in harassment that does not result in a tangible employment action." *Vance*, 570 U.S. at 430. Absent a constructive discharge, or some other official act, "the extent to which the supervisor's conduct has been aided by the agency relation…is less certain" and justifies affording the employer an opportunity to establish an affirmative defense. *Suders*, 542 U.S. at 148-49. To this end, the Court instructed the jury that if they found that Defendant Roman was Plaintiff's supervisor, and that his harassment culminated in Plaintiff's constructive discharge (as Plaintiff alleged), then they must render a verdict in Plaintiff's favor. *See* Trial Tr., vol. 6, 183:11-184:10, Aug. 6, 2021. Likewise, the Court instructed the jury that if they did not find that either of these elements were proven by a preponderance of the evidence, they must then consider Defendants' affirmative defense. *Id.* at 184:8-185:12.

Despite having multiple opportunities to do so, Plaintiff has not, and cannot, cite to any binding precedent in this Circuit supporting her contention that an employer may be held strictly liable based solely on the harasser's status as a corporate officer and absent any proof of a

tangible employment action.[5]  The Court specifically asked Plaintiff to produce binding Third Circuit case law demonstrating that it was reversable error not to instruct the jury on Plaintiff's proposed "proxy theory" of liability.  Trial Tr. vol. 6, 94:23-96:25, Aug. 6, 2021.  Plaintiff did not do so.  The Court asked Plaintiff to produce binding Third Circuit case law adopting the position that the "proxy theory" of liability summarily precludes an employer from asserting an affirmative defense in Title VII cases.  Plaintiff did not do so.  Finally, the Court asked Plaintiff to reconcile her position with that of binding Third Circuit and Supreme Court precedent which holds that strict employer liability requires, among other things, proof of a tangible employment action.  Plaintiff did not do so, nor has she attempted to do so in the present Motion.

The Court did not err in rejecting Plaintiff's argument.  Instead, the Court declined Plaintiff's invitation to usurp the role of the Third Circuit by adopting a new interpretation of Title VII and using it to modify the Circuit's model jury instructions.  District courts must faithfully apply the law as it is, not as they, or the litigants before them, wish it to be.  "[T]aken as a whole, and viewed in the light of the evidence," the Court finds that the jury instructions "fairly and adequately submit[ted] the issues in the case to the jury" by reflecting the standard repeatedly articulated in binding case law.  *See Coney v. NPR, Inc.*, 312 F. App'x 469, 472 (3d Cir. 2009) (quoting *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 922 (3d Cir. 1986)).  Plaintiff's desire for a new standard does not render the instructions in this case "misleading or inadequate."  *Savarese v. Agriss*, 883 F.2d 1194, 1202 (3d Cir. 1989).

---

[5] Plaintiff has repeatedly pointed to case law from other district courts in this Circuit, as well as case law from other circuits, to support her contention that she was entitled to a jury instruction on the "proxy theory" of employer liability.  The Court remains unpersuaded that this authority conclusively demonstrates that this theory of liability is settled law or that declining to adopt Plaintiff's proposed jury instruction constituted prejudicial error.  Indeed, one of the district court cases cited by Plaintiff herself explicitly acknowledges that "there is very little case law on the alter-ego [aka proxy] theory of liability."  *Strauser v. Jay Fulkroad and Sons, Inc.*, No. 03-2017, 2005 WL 2020636, at *5 (M.D. Pa. July 28, 2005).  Likewise, a case on which the court in *Strauser* relied also recognizes "the absolute scarcity of case law development of this alternate avenue of employer liability."  *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1232 (10th Cir. 2000).

### b. Abuse of Process

Plaintiff has taken the novel approach of seeking reversal of a jury verdict based in part upon an issue on which the jury ruled in her favor. By permitting Defendant Roman to proceed with his counterclaim for abuse of process, Plaintiff contends that she was prejudiced by having to defend against a "baseless claim." Pl. Mot. 9. As a threshold matter, Plaintiff failed to object to the Court's jury instruction regarding Defendant Roman's counterclaim in accordance with Fed. R. Civ. P. 51(c)(1).[6] Accordingly, Plaintiff has waived her right to raise any such objection post-trial. *See Lesende v. Borrerro*, 752 F.3d 324, 335 (3d Cir. 2014). Plaintiff's waiver notwithstanding, the record evidence in this matter demonstrates that Defendant Roman's counterclaim was not baseless. Perhaps most significantly, *the jury ruled in Plaintiff's favor* on this claim. Aside from the conclusory assertion that she was "prejudiced," Plaintiff has offered no evidence showing that merely having to defend against Defendant Roman's allegations amounted to a miscarriage of justice requiring reversal of the jury's verdict.

Litigants may be liable for the common law tort of abuse of process when they institute a legal action to achieve "a purpose for which the process was not designed." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). To establish an abuse of process claim, the moving party must show that a litigant brought suit "in a way that constituted a perversion of the [legal] process." *Bracey v. Huntingdon County*, 781 F. App'x 73, 76 (3d Cir. 2019) (quoting *Gen. Refractories*, 337 F.3d at 304). Such circumstances include "intentionally withholding critical documents, permitting false testimony…and misrepresenting facts to opposing counsel and the court." *In re Finney*, 184 F. App'x 285, 289 (3d Cir. 2006) (quoting *Gen. Refractories*, 337 F.3d at 301-05). The moving party must also show that the abusive

---

[6] Plaintiff also did not seek exclusion of evidence concerning Mr. Roman's counterclaim in her motions in limine.

conduct caused them harm. *Gen. Refractories*, 337 F.3d at 304. This generally occurs when a party's actions lack a legitimate legal justification and are primarily intended to increase the burden and expense of litigation for the other side. *Finney*, 184 F. App'x at 289.

Defendants filed a counterclaim for abuse of process against Plaintiff for allegedly submitting false pleadings against Mr. Roman in order to harm his reputation and expose him to excessive attorney's fees. Defs.' Resp. to Pl. Mot. for Summary J., 5, 9 (ECF No. 82). At the outset of this matter, Plaintiff included charges against Mr. Roman of unlawful interference with her job prospects as part of her gender discrimination claim and her since-withdrawn retaliation claim. *Id.* at 1. Defendants argued that Plaintiff had no legitimate basis or purpose for these allegations, having known that she was not offered a job for which she applied due to her poor performance during the interview. *Id.* at 5-6. Plaintiff originally claimed that she was not hired because Mr. Roman called her interviewer and made multiple statements attacking her character. *Id.* Upon learning that it was her boyfriend, and not Mr. Roman, who made the phone call, Plaintiff consented to dismissal of her retaliation claim. Pl. Mot. 2.

Defendants argued that Plaintiff's belated willingness to withdraw this claim was irrelevant since it already caused Mr. Roman damage and because Plaintiff's remaining Complaint still included false allegations of unlawful interference and retaliation. However, Plaintiff claims that "the mere filing and subsequent withdrawal of a Complaint cannot satisfy the abuse of process standard[]." Pl. Mot. 9. According to Plaintiff, her allegations stemmed from a good faith belief in the accuracy of the facts as pled and that her Complaint was

expeditiously withdrawn upon learning that Mr. Roman had not made the phone call.[7] *See id.* at 9-10. As a result, Plaintiff reasons, Mr. Roman did not sustain the requisite harm necessary to advance an abuse of process claim. *See id.* at 10.

Plaintiff's proposition that an abuse of process claim requires some overt act beyond the filing of a complaint is misplaced. Although a litigant's subjective bad faith or ulterior motive is insufficient to raise an abuse of process claim on its own, such a claim may lie where a litigant intends to cause financial injury to the opposing party. *See Downs v. Borough of Jenkintown*, No. 18-4529, 2019 WL 1383802, at *7 (E.D. Pa. Mar. 26, 2019). Where such intent is present, providing false testimony or misrepresenting facts to the court as part of a complaint may constitute a perversion of the legal process. *See Finney*, 184 F. App'x at 289.

Plaintiff herself acknowledged that, prior to filing her Complaint, she knew that her job interview had not gone well and that the employer's decision not to hire her was unrelated to the phone call they later received. *See* ECF No. 93 at 21-22. Likewise, Plaintiff admitted that she did not believe that Mr. Roman spoke negatively about her to any other prospective employers. *Id*. Plaintiff also did not deny that the Complaint in this matter still included the claim that Mr. Roman interfered with her job prospects by making false statements about her to prospective employers. Compl. ¶ 55. Finally, Plaintiff has offered no argument concerning the legal fees Mr. Roman allegedly incurred in defending against these allegations. Based on this uncontroverted factual evidence, the Court found that a reasonable jury could have concluded that Plaintiff's actions amounted to a perversion of the legal process that caused Mr. Roman

---

[7] Plaintiff's assertion that she withdrew her retaliation claim in good faith reliance on the truth of her allegations is disputed by Defendants. *See* Def. Resp. to Pl. Mot. for Summary J. at 4-5 (ECF No. 82). In fact, Defendants have asserted that Plaintiff actively conspired with her boyfriend to make it appear as though Defendant Roman sabotaged her job prospects for the very purpose of filing her retaliation claim. *Id.* at 9. Therefore, according to Defendants, Plaintiff's ultimate willingness to abandon her retaliation claim was not a good faith effort to remedy a misperception of the facts, but a result of her being caught in the act of actually misrepresenting the facts. *See id.* These allegations, if proven, could constitute an abuse of the legal process.

harm.  This holding is unaffected by the jury's ultimate decision in Plaintiff's favor.  Likewise, Plaintiff has offered no evidence upon which the Court could determine that she suffered substantial prejudice justifying reversal in this matter.

### c. Exclusion of Prejudicial Evidence

Defendant also contends that the Court erred in precluding a non-party witness, Lisa Barbounis, from testifying that, while on a trip to Israel with Defendant Roman, she became so afraid of him that she slept with a knife.  Pl. Mot. 11.  In employment discrimination cases, a district court has broad discretion is determining whether to admit evidence concerning another employee's alleged harassment.  *Mandel*, 706 F.3d at 167-68.  The probative value of this evidence depends on several factors, including "how closely related the evidence is to the plaintiff's circumstances and [the] theory of the case."  *Id.*  Given that Ms. Barbounis was not a party to this case, that this alleged event occurred outside of Plaintiff's workplace (in another country), and because the inflammatory nature of this allegation constituted unfair prejudice which substantially outweighed any probative value with regards to Ms. O'Brien's case, the Court ruled that this testimony was inadmissible.[8]  *See* ECF No. 123 at 8-9 (citing Fed. R. Evid. 403).  Recognizing that evidence of other acts of harassment, and Plaintiff's knowledge thereof, may constitute probative evidence supporting a hostile work environment claim, the Court did not deem any other testimony by Ms. Barbounis inadmissible prior to trial.[9]  *Id.* (citing *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 111 (3d Cir. 1999)).  Plaintiff was therefore afforded

---

[8] Notwithstanding this ruling, counsel for Plaintiff displayed to the jury an unredacted document that mentioned the knife.  *See* Trial Tr., vol. 5, 24:10-30:12, Aug. 4, 2021 (ECF No. 137).  This prompted a sidebar, during which the Court confirmed that the jurors had not observed this prohibited reference to the knife before the exhibit was removed from their view.  *Id.*

[9] The Court was, however, forced to strike testimony by Ms. Barbounis during trial.  Despite the Court's repeated admonitions concerning counsel's obligation to ensure that witness testimony did not run afoul of the Court's evidentiary rulings, Ms. Barbounis testified that an employee brought pepper spray into the office out of fear of Defendant Roman.  Trial Tr., vol. 4, 181:14-182:5, Aug. 3, 2021 (ECF No. 136).

wide latitude in presenting her case, which included offering testimony of three non-party witnesses concerning alleged instances of harassment at the hands of Defendant Roman, and the exclusion of this portion of Ms. Barbounis's testimony did not constitute prejudicial error.

## V.   CONCLUSION

Plaintiff has not sustained her burden of demonstrating that "the jury's verdict resulted in a miscarriage of justice or shocks the conscience."  The Court's decision to instruct the jury using the standard for employer liability reflected in binding precedent and the Third Circuit Model Jury Instructions, instead of Plaintiff's novel interpretation of Title VII, did not result in prejudicial error.  Likewise, having to defend against Defendant Roman's plausible claim for abuse of process, an issue on which she prevailed, did not constitute a substantial injustice against Plaintiff.  Finally, Plaintiff has failed to demonstrate how the Court's decision to exclude unfairly prejudicial testimony, especially in light of the wide latitude afforded by the Court in presenting her case to the jury, warrants a reversal of the jury's verdict and an entirely new trial.  Plaintiff's Motion is therefore denied.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge